**Paul E. DUQUETTE**

v.

**James J. GODBOUT and Richard Roe.**

**No. 81–486–Appeal.**

Supreme Court of Rhode Island.

March 2, 1984.

Michael Kiselica, Cranston, for plaintiff.

William J. Toohey, City Sol., City of Warwick, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal from a reinstated judgment [1] of the Superior Court resulting in a

---

1. The case was originally heard without a jury. *Duquette v. Godbout*, R.I., 416 A.2d 669, 670 (1980). The trial justice found for the defendants. *Id.* However, as the defendants did not originally plead the affirmative defense of justification, we vacated the original judgment with leave to amend. *Id.,* 416 A.2d at 672. The trial justice again found for the defendants after the second trial.

nonjury verdict for the defendants. *See Duquette v. Godbout*, R.I., 416 A.2d 669 (1980). The plaintiff alleged that the defendants trespassed in his Warwick apartment. The defendants, on remand, were allowed to amend their answer to include the affirmative defense of justification. At the second trial the defendants prevailed under this theory.

On or about June 15, 1975, defendants, two Warwick policemen and their sergeant, responded to a report that there was a woman screaming in a hallway at the Bayside Apartments in Warwick. When the three officers arrived, they found Mrs. Marjorie Benton (Mrs. Benton) screaming and banging on plaintiff's apartment door. Mrs. Benton testified that she believed her sixteen-year-old daughter was in the apartment. She further testified that she had heard screaming in the building. Mrs. Benton was emotionally overwrought, believing her minor daughter to be in peril.

Officer Godbout knocked on plaintiff's apartment door. Officer Castiglioni identified Godbout, the sergeant, and himself as police officers. The defendants waited for a response. As none was forthcoming, they knocked again. There was still no answer from within the apartment. The officers then contacted Warwick police headquarters to place a telephone call to the building manager. The building manager did not have a key to the apartment. He told the officers "to take the necessary steps if [they] had to get into the apartment."[2] The sergeant then directed Officer Godbout to force open the door. Godbout proceeded to do so.

The defendants testified that they then entered the apartment. They checked each room for the minor girl, looking under beds and into closets. No one was present and no evidence of criminal conduct was found. Upon their departure, the building manager

and defendants left a note on plaintiff's apartment door directing him to contact the Warwick police when he returned. The plaintiff subsequently returned home. He testified that everything in the apartment was left intact and that nothing had been damaged or stolen.

The building manager paid for the cost of repairing the apartment door. The plaintiff has not alleged any item of pecuniary loss arising from the intrusion. Rather, the damages that he sought below arose from the fact of the break-in itself. The trial justice found, however, that the trespass was justified and denied plaintiff any recovery for the intrusion. We agree.

The sole issue to be decided here is whether defendants' entry into plaintiff's apartment was justified. Proper resolution of this issue requires an analysis of defendants' conduct under the Fourth Amendment to the United States Constitution and art. I, sec. 6, of the Rhode Island Constitution. We have recognized that this court has the power and the right, under *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730, 734 (1967), to provide the citizens of this state with stricter safeguards against governmental intrusions, under art. 1, sec. 6, than are provided generally under the Fourth Amendment. *State v. Benoit*, R.I., 417 A.2d 895, 899 (1980). *See also State v. Sitko*, R.I., 460 A.2d 1, 3 (1983); *State v. Maloof*, 114 R.I. 380, 388–89, 333 A.2d 676, 681 (1975). We have also recognized, however, that in most contexts the Fourth Amendment provides ample protection against unreasonable searches and seizures. "The decision to depart from minimum standards and to increase the level of protection should be made guardedly and should be supported by a principled rationale." *State v. Benoit*, R.I., 417 A.2d at 899.

---

**2.** We recognize that the building manager could not validly consent to the search of plaintiff's apartment. *Stoner v. California*, 376 U.S. 483, 488, 84 S.Ct. 889, 892, 11 L.Ed.2d 856, 860, *reh. denied*, 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed.2d 303 (1964); *Chapman v. United States*, 365 U.S. 610, 616–17, 81 S.Ct. 776, 779–80, 5

L.Ed.2d 828, 833 (1961); *United States v. Goldenstein*, 456 F.2d 1006, 1009 (8th Cir.1972), *cert. denied*, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974); *Maxey v. State*, 251 Ind. 645, 649–50, 244 N.E.2d 650, 653 (1969), *cert. denied*, 397 U.S. 949, 90 S.Ct. 969, 25 L.Ed.2d 130 (1970).

In *State v. Benoit, supra,* we decided that a departure from the minimum standards of the Fourth Amendment in the area of automobile searches, as those standards were set forth at the time by the United States Supreme Court, was necessary. In the present case, we are dealing with the so-called exigent-circumstances or emergency exception to the probable-cause and warrant requirements of the Fourth Amendment. We see no reason to depart from the standards of the Supreme Court as they pertain to these exceptions.

Governmental "searches conducted outside the judicial process, without prior approval by [a] judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967) (quoted with approval in *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290, 298 (1978)). *See also Coolidge v. New Hampshire,* 403 U.S. 443, 460, 91 S.Ct. 2022, 2034–35, 29 L.Ed.2d 564, 579, *reh. denied,* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971). In *State v. Benoit,* R.I., 417 A.2d at 900, we noted that the rationale underlying these exceptions "is that the existence of an exigency or some other mitigating circumstances permits a police officer, rather than a judicial officer, to make a dispositive determination on the issue of probable cause to search for incriminating evidence." We have also recently discussed the exigency exception in *State v. Alexander,* R.I., 433 A.2d 965 (1981), which involved the warrantless search of a hotel room for contraband.

As one court has noted, the typical situation in which the exigent-circumstances exception applies occurs when police officers are pursuing an offender whom they have probable cause to believe committed a known offense. *United States v. Booth,* 455 A.2d 1351, 1354 (D.C.App.1983). This exception has been expanded, however, to permit warrantless entry in an "emergency" requiring preventative action, even though no crime has been committed. *Id.; see also People v. Amato,* 193 Colo. 57, 60,

562 P.2d 422, 424 (1977). This has become known as the "emergency" exception. We feel that the present case falls within this exception and that the same principles that dictate applying the former doctrine apply as well to the latter.

■ The emergency doctrine requires that the responding officer have a reasonable belief that his assistance is required to avert a crisis. *People v. Lenart,* 91 A.D.2d 132, 134, 457 N.Y.S.2d 878, 880 (1983); *State v. Sanders,* 8 Wash.App. 306, 312, 506 P.2d 892, 896 (1973). This standard is less stringent than the determination of probable cause which a police officer must make in the typical exigent-circumstances situation. Such a standard is permissible in an emergency situation since the motivation for the intrusion is to preserve life and property rather than to search for evidence to be used in a criminal investigation. *People v. Mitchell,* 39 N.Y.2d 173, 177, 347 N.E.2d 607, 609–10, 383 N.Y.S.2d 246, 248 (1976).

■ In the instant case, defendants came upon a very distraught mother. She reported that her minor daughter was missing and that she believed the child to be in peril within the apartment. Under these circumstances, we find that defendants could, and in fact did, have a reasonable belief that their assistance was necessary in locating the child. *Accord State v. Leandry,* 151 N.J.Super. 92, 376 A.2d 574 (1977) (officers' entry in belief that a wounded person was within premises justified trespass).

■ This exception, however, is not without limitation. There must be a legitimate need for the performance of the search. *Mincey v. Arizona,* 437 U.S. 385, 393–94, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290, 301 (1978); *Warden v. Hayden,* 387 U.S. 294, 298–300, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782, 787–88 (1967). In the case below, the trial justice correctly stated that there was a need for a search because if the girl had been "in a bad condition for any reason, liquor, drugs or beating * * * [defendants] could [not] be justified [in waiting for a warrant]." We

know with the benefit of hindsight that none of these conditions existed. The defendants, however, were faced with a hysterical mother and properly erred on the side of caution. *Wayne v. United States,* 318 F.2d 205, 212 (D.C.Cir.1963).

 In addition, the search must be "carefully tailored" to render only the perceived need for help and should not extend any further. *United States v. Booth,* 455 A.2d at 1355–56. The plaintiff offered testimony that his stereo and his television set had been "turned around" by defendants during their search. This action would normally constitute a prohibited extension of the search since these items of personalty had nothing to do with the search for the girl. However, defendants and Mrs. Benton all testified that these items were not disturbed. The trial justice chose to accept defendants' testimony on this issue. Such was his prerogative as the trier of fact. "We [will] not, on appeal, consider what evidence should have been accepted and what should have been rejected." *Rodriques v. Santos,* R.I., 466 A.2d 306, 312 (1983); *see also J. Koury Steel Erectors, Inc. of Massachusetts v. San-vel Concrete Corp.,* 120 R.I. 360, 364, 387 A.2d 694, 696–97 (1978). "The trial justice was acting within his discretion in deciding which testimony to accept." *Rodriques v. Santos,* R.I., 466 A.2d at 312.

 In determining the validity of an "emergency" search, we must also consider whether the purpose of the search would have been frustrated if the officers had been required to obtain a warrant. *Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543, 551 (1925). This element underscores the necessity that the police have an objective, reasonable belief that a crisis can only be avoided by swift and immediate action. *State v. Benoit,* R.I., 417 A.2d at 900. In the present case defendants could not reasonably have waited to obtain a warrant before searching plaintiff's apartment. The defendants established at trial that they were faced with an emergency situation. Under the circumstances, they pursued a most prudent course of action. They knocked, announced their

identity, and sought a pass-key before entering the apartment.

 It is also imperative under the emergency doctrine that the intrusion not be a pretext to make an arrest or a search to seize evidence. *United States v. Goldenstein,* 456 F.2d 1006, 1009 (8th Cir.1972), *cert. denied,* 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974); *People v. Mitchell,* 39 N.Y.2d at 178, 347 N.E.2d at 610, 383 N.Y. S.2d at 249. This problem is most acute when the person sought or the premises being searched are the subject of a criminal investigation. *See, State v. Resler,* 209 Neb. 249, 257, 306 N.W.2d 918, 924 (1981). A review of the record satisfies us that the defendants' sole intent here was to search for the minor.

For the stated reasons the plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.