**STATE**

v.

**Diana PORTES.**

No. 2001–567–C.A.

Supreme Court of Rhode Island.

Jan. 14, 2004.

Virginia McGinn, Esq., Providence, for Plaintiff.

John F. Cicilline, Esq., Bristol, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## OPINION

FLAHERTY, Justice.

On June 28, 2000, three officers from the North Providence Police Department responded to 1605 Douglas Avenue, apartment 10, in that town as a result of a 9–1–1 call made by an unidentified male who reported a disturbance at that location. Because there was a language barrier between the caller and 9–1–1 operator, the municipal police officers who responded were unaware of the precise nature of the disturbance precipitating the call. Upon arrival, Officer Paul Martellini approached the front door of the apartment while Officers Scott Godin and Breit secured the rear of the residence. Martellini knocked on the door and identified himself; however no one answered the door. As the officer continued to knock on the door, he heard the sound of someone running up and down stairs and a door banging from within the apartment. At that time, a Ms. Eleanor M. Papa, the neighbor in the adjacent apartment, informed Martellini that she had seen the female tenant of apartment 10,[1] later identified as defendant, and defendant's son, enter a taxicab and depart less than a half-hour before.[2] Records later confirmed that defendant and her son had taken a cab to Providence. Papa also informed the officer that after defendant departed, she heard a loud commotion and a banging coming from the upstairs portion of apartment 10.

While Martellini was engaged at the front door, Officer Godin saw a man, later identified as John Tejada,[3] exit the back sliding-glass door of the apartment onto the deck and peer over the railing. Apparently, Tejada was startled upon seeing Godin below, and, despite Godin's orders to stop, he ran back inside the apartment. Godin relayed this information to Officer Martellini, who then forced his way into the apartment. Upon entry, Martellini noticed Tejada standing on the stairs of the dimly lit apartment. An agitated Tejada repeatedly ordered the officer out of the home before descending, at which point Martellini cuffed him and performed a pat-down of his person. Tejada was belligerent and offered no information except for the name of "Diana," presumably speaking of defendant. A language barrier further hindered communication between the officers and Tejada, and the officers were still unable to surmise what had prompted the

---

1. Although Portes was the sole leaseholder of the unit, her son was listed as an additional tenant. The landlord was aware that Portes's boyfriend was also residing with them. On the occasions that Portes paid her rent to the landlord directly, the boyfriend often accompanied her, and she paid in cash.

2. After the forced entry and cursory search of defendant's apartment, the police again questioned Papa. She reported having seen a

woman and several men running to and from defendant's apartment and the parking area of the complex on that evening. She also indicated that vehicles bearing out-of-state license plates frequently were parked in the parking spots designated for the apartment.

3. It was later discovered that Tejada had been staying at the apartment for several days; his identification listed a New York address.

9–1–1 call. In the interest of securing the safety of any individuals in the apartment, the officers conducted a cursory search throughout the residence. Although they found no one else in the apartment, a loaded clip for a 9 millimeter firearm was in plain view on the nightstand of the master bedroom. Also, a clear bag containing what appeared to be cocaine sat in open view on the kitchen counter. The Narcotics Division of the North Providence Police Department was summoned and the investigation was handed over to officers specializing in illegal narcotics.

Narcotics Officer Christopher Cardarelli soon arrived, and he confirmed the presence of cocaine in the bag in the kitchen. Based on this information, Officer Cardarelli obtained a search warrant for the premises, and a thorough examination of the premises was conducted. Two small digital scales, sandwich bags, duct tape and an artificial beer can with a false compartment were discovered in the kitchen cabinets. These items were seized due to their common association with narcotics trafficking. In the master bedroom, Cardarelli also found approximately five kilograms of cocaine [4] under the mattress wrapped in five separate bundles with duct tape and a 9 millimeter handgun hidden under clothing in a closet. Personal documents of defendant and her live-in boyfriend, Melquiades Villanueva, also were seized from the master bedroom.

Arrest warrants promptly were issued for Portes, Villanueva, and Tejada, charging them with unlawful possession of in excess of one kilo of cocaine, carrying a dangerous weapon when committing a crime of violence, conspiracy to violate the controlled substance laws, and possession of cocaine with the intent to deliver.

Villanueva and Tejada fled the jurisdiction before they could be arrested, and remain at-large. Portes surrendered to police and was tried before a jury on all four counts. At the close of the evidence, the trial justice granted defendant's motion for judgment of acquittal on both the handgun and conspiracy counts. The jury found her guilty on the two possession counts. On the first count she was sentenced to thirty years, with eight years to serve, the balance suspended, with probation. On the fourth count she was sentenced to eight years to serve. Both sentences were to run concurrently.[5] The defendant now appeals those two convictions. For the reasons set forth below, we deny her appeal.

## Issues

Portes appeals from the judgment of conviction on four grounds. First, she urges that the trial justice erred in denying her pretrial motion to suppress the evidence seized as a result of a warrantless search of her residence. Second, she faults the trial justice for finding that there was sufficient evidence to establish constructive possession of the contraband beyond a reasonable doubt. Third, she argues that the trial justice erred when he deferred ruling on the state's motion to exclude evidence of Villanueva and Tejada's flight from the jurisdiction. Finally, defendant maintains that she was prejudiced by the prosecutor's closing argument, which commented on her financial status and suggested that she relied on drug money for subsistence. The defendant seeks a reversal of the judgment of conviction and a new trial based on these four contentions.

---

4. Testimony at trial revealed that the amount of cocaine seized in defendant's apartment had an approximate value of $200,000.

5. The defendant's motion for a new trial was denied prior to sentencing.

## Motion to Suppress Tangible Evidence

 The defendant first argues that the trial justice improperly denied her motion to suppress the evidence seized as a result of a warrantless entry into her apartment. She maintains that the limited information known to the police just prior to their forced entry did not indicate that a life was in peril. Therefore, she claims, the situation did not rise to the level of exigent circumstances necessary to allow an exception to the constitutional requirement that the police obtain a warrant. The defendant further asserts that even if exigent circumstances were present, a warrantless entry was not justified absent probable cause, which she contends was not present. In her view, once inside, the police greatly exceeded the scope of a cursory search for security purposes when they lifted beds and opened kitchen cabinets. We disagree with defendant's assertions and take issue with the chronology of events that she suggests.

 An analysis of the admissibility of the evidence harvested in the search of defendant's apartment must begin with a determination of whether the police's entry was justified. It is well established that governmental "searches conducted outside the judicial process, without prior approval by [a] judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few well-delineated exceptions." *Duquette v. Godbout*, 471 A.2d 1359, 1362 (R.I.1984) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). One such recognized exception is that of exigent circumstances, such as occurs in a police pursuit of an offender of whom they have probable cause to believe committed a known offense. Under the so-called "emergency exception," this Court has recognized an expanded version of this doctrine "to permit warrantless entry in an 'emergency' requiring preventative action." *Duquette*, 471 A.2d at 1362. In *Duquette*, we held that forced entry was justified under the emergency exception when the police possessed information that a minor child was in peril inside an apartment from which screaming had been reported and where knocking and announcement by police had elicited no response. This doctrine requires that the officer have an objective, reasonable belief that his swift and immediate action is required to avert a crisis. *State v. Gonsalves*, 553 A.2d 1073, 1075 (R.I.1989); *Duquette*, 471 A.2d at 1363 (citing *State v. Benoit*, 417 A.2d 895, 900 (R.I.1980)). The impetus of the entry is to preserve life and property. For this reason, the more stringent standard of probable cause is not required. That said, it is important to ensure that the intrusion was not merely a pretext to make an arrest or a search to seize evidence. *Duquette*, 471 A.2d at 1363.

In the instant matter, entry into the apartment was made only after the police officers' presence had been repeatedly announced and ignored, a male occupant was seen attempting to exit from the rear of the apartment and then retreating back inside, and upon information from the neighbor that she had heard a commotion coming from the apartment. Based on the totality of the circumstances before them, and based on an inability to discern what situation had prompted the emergency call, the police acted rationally and properly in the interest of protecting citizens from bodily harm and property destruction. We agree with the trial justice's statements at the hearing on the motion to suppress the evidence:

"I think the police would have been derelict in their duty not to enter those premises * * *. I'm satisfied that under the circumstances presented, there were exigent circumstances; that the

officer had every right to get into that residence to insure that there was not foul play going on in there. * * * And I think that the officer did the appropriate thing."

This Court is mindful that police are in the emergency service business and they usually have little or no time to leisurely consider their options or engage in protracted evaluation. Indeed, in this case it would have been unreasonable for the officers to simply walk away from the unanswered door given the 9-1-1 call and other facts known to them.[6] Indeed, a 9-1-1 call is one of the most universally recognized means through which the police learn that someone is in a dangerous situation and needs immediate help. The trial justice properly relied on Officer Martellini's testimony that he reasonably believed a life may have been in peril and that a potential crisis demanded decisive and immediate action. The record is devoid of suggestion that the police had any motive other than to respond to a call for help. Although the entry subsequently proved fruitful for evidence of cocaine, there is no indication that the police entered the apartment with any prior knowledge of drug or other criminal activity at that location.

With respect to the items seized, including the bag of cocaine on the kitchen counter, the trial justice's denial of defendant's motion to suppress these items as being in plain view was proper. We approve the trial justice's ruling even under a more stringent standard of review, in light of the constitutional rights involved in this case and upon an independent examination of the facts, findings and record. See State v. Apalakis, 797 A.2d 440, 443 (R.I.2002); State v. Sundel, 121 R.I. 638, 644, 402 A.2d 585, 589 (1979). The officers conducted a cursory search throughout the apartment to learn who was present and what had prompted the emergency call. Although we are cognizant "that general searches and seizures that consist 'of a general, exploratory rummaging in a person's belongings' are prohibited under the Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution." State v. Pratt, 641 A.2d 732, 738 (R.I.1994) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and citing State v. Kowal, 423 A.2d 1380, 1382 (R.I.1980)), at no time during the initial cursory search did the officers conduct a more general, exploratory

---

6. We are mindful that the 9-1-1 call that prompted the police to respond to 1605 Douglas Avenue was anonymous, insofar as the male caller apparently did not identify himself, or an identity was not obtained because of a language barrier. However, records indicate that the call originated from inside apartment 10, and police later surmised that Tejada had placed the call. We distinguish the instant case from Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), in which the United States Supreme Court held that an anonymous call made from an unknown location indicating that a person carrying a gun, without more, was not sufficient to justify a police stop and frisk of that person because the tip lacked the requisite indicia of reliability. Id. at 271, 120 S.Ct. 1375. In that case, the so-called Terry "stop and frisk" was deemed unreasonable because police suspicion arose merely from the anonymous call and not from any observations of their own. Id. at 272-73, 120 S.Ct. 1375. In the case now before us, the police responded to an emergency call from within the residence, and they developed a reasonable suspicion before entering the apartment based upon firsthand observations of noise from within the residence, no response at the door, an attempted escape from the back porch, and reports from the neighbor of a commotion. Moreover, unlike the situation in J.L., in which the defendant merely stood at a bus stop with a concealed weapon, the situation at the Portes's residence had far greater urgency and likelihood that someone's well-being was in jeopardy.

search. Furthermore, we note that there must be a legitimate need for the type of search conducted here, *Duquette,* 471 A.2d at 1362 (citing *Mincey v. Arizona,* 437 U.S. 385, 393–94, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)), and the search must be "carefully tailored" to render only the perceived need for help and should not extend any further. *Id.* at 1363 (citing *United States v. Booth,* 455 A.2d 1351,1355–56 (D.C.App.1983)). In light of the circumstances confronting the officers once inside the premises, including a dimly lit apartment and a hostile, uncooperative Tejada, the officers were justified in entering every room to take control of a potentially volatile situation and to ensure the safety of themselves and other unknown occupants. According to the testimony of Officers Martellini, Godin, and Cardarelli, it was only after a search warrant was obtained that the beds were lifted, clothes moved, and kitchen cabinets opened. Although defendant alleges that such activities took place before a search warrant was obtained, the evidence clearly suggests otherwise. We believe the trial justice was correct in relying on the officers' testimony and the evidence to the contrary.

▮▮▮ Under the plain-view doctrine, a police officer may seize evidence in plain view when he is lawfully in a position that allows him to see the evidence and it is immediately apparent to the officer that the object is evidence of criminality. *Pratt,* 641 A.2d at 738 (citing *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).[7] In a plain-view seizure case, probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable

caution in the belief' * * * that certain items may be * * * useful as evidence of a crime." *Pratt,* 641 A.2d at 738 (quoting *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). We are convinced that the police reasonably believed that the bag on the kitchen counter contained illicit drugs. Upon discovery of the bag containing a white substance on the kitchen counter, Officer Godin testified that he immediately suspected that the bag contained cocaine. Officer Martellini agreed, and a subsequent field test confirmed their suspicions, thereby warranting that a search warrant be obtained.

We therefore see no reason why the trial justice should have suppressed this evidence. Having determined that the officers properly discovered the cocaine in plain view on the kitchen counter, we believe that the search warrant was both necessary and obtained properly. The trial justice correctly found that "[t]he search warrant was properly obtained, and the affidavit in support of it has ample probable cause set on it." Moreover, we are convinced that Officer Cardarelli took the necessary steps to obtain this lawful search warrant before further disturbing the contents of the apartment. The cocaine and drug paraphernalia seized were fair game to be used as evidence over the course of defendant's trial, irrespective of the reasons for the 9–1–1 call earlier that day.

### Sufficiency of Evidence

▮▮▮ Portes next asserts that there was insufficient evidence to prove beyond a reasonable doubt that she constructively

---

7. We note that in *Horton v. California,* 496 U.S. 128, 135, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), seizure of an article within plain view may also be legitimate "where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object." However, "even though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition." *Id.* at 130, 110 S.Ct. 2301.

possessed the cocaine and that, therefore, her motion for a new trial should have been granted. She argues that her mere presence in, and leasing of, the apartment, and her association with Villanueva does not demonstrate that she had knowledge of the cocaine or that she exercised control over it. Portes points to the lack of fingerprints lifted from the contraband as well as the possibility that Tejada placed the drugs in plain view during her absence in support of this assertion.

We address defendant's contentions by reviewing the trial justice's denial of her motion. *See State v. Mercado,* 635 A.2d 260, 262 (R.I.1993) ("challenge to the sufficiency of the evidence is properly framed in terms of a challenge to the trial justice's denial of the defendant's motions for judgment of acquittal and new trial"); *see also State v. Collazo,* 446 A.2d 1006, 1011 (R.I.1982). Although the state contends that defendant's argument is based strictly on an attack of the trial justice's ruling on a motion for judgment of acquittal, we note that defendant made a motion for judgment of acquittal for the firearm and conspiracy charges and not for the possession charges. Therefore, we will restrict our analysis to the motion for a new trial, which was denied by the trial justice.

Upon reviewing a trial justice's ruling on a motion for a new trial, this Court accords great weight to the trial justice's findings of fact and shall disturb such findings only if the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *State v. Medina,* 747 A.2d 448, 449 (R.I.2000); *Mercado,* 635 A.2d at 265. The trial justice may grant a new trial motion if, in his independent assessment of the weight and the credibility of the evidence, he determines that the verdict is against the preponderance of the evidence. *State v. Henshaw,* 557 A.2d 1204, 1207–08 (R.I.1989).

However, if the trial justice agrees with the verdict or determines that reasonable minds might fairly reach differing conclusions, then the motion shall be denied. *State v. Brezinski,* 731 A.2d 711, 716 (R.I. 1999) (per curiam).

A defendant may be in constructive possession of illegal drugs "notwithstanding the fact that the contraband was not in his or her immediate physical possession." *In re Vannarith D.,* 731 A.2d 685, 689 (R.I.1999); *see also State v. Hernandez,* 641 A.2d 62, 70 (R.I.1994). In a constructive possession case, the state must demonstrate "that (1) the defendant had knowledge of the presence of the item and (2) the defendant intended to exercise control over the item." *Hernandez,* 641 A.2d at 70 (citing *Mercado,* 635 A.2d at 262). Constructive possession may be exclusive or joint, *see Mercado,* 635 A.2d at 263, and it may be inferred from a totality of circumstances. *Hernandez,* 641 A.2d at 70. However, when possession of the premises is not exclusive, knowledge of the presence and character of the substance may not be reasonably inferred from the mere fact that the defendant resided there. In such a case it is necessary to look at additional factors and circumstances to first prove that he or she had the requisite knowledge, and second, that he or she intended to exercise control. *State v. Johnson,* 784 A.2d 304, 307 (R.I.2001) (per curiam) (citing *Hernandez,* 641 A.2d at 70–71).

In the case of *Hernandez,* the defendant resided with several other occupants in her home, where a large amount of heroin and drug paraphernalia was discovered throughout the entire premises. An inference of constructive possession was supported not only by the defendant's occupancy and ownership of the home, but also by the large quantity of drugs, paraphernalia, and cash found throughout the home,

the high volume of activity to and from the home by other individuals, and the newly remodeled areas in her home despite her assertion of the need for public assistance. This Court affirmed a judgment of conviction for possession of heroin with intent to deliver based on the totality of strong circumstantial evidence and the reasonable inferences that could be drawn therefrom. *State v. Hernandez,* 641 A.2d 62 (R.I.1994).

Here, after careful review of the trial justice's consideration of defendant's motion for a new trial, we find no reason to disturb his findings. The trial justice thoroughly reviewed the evidence and the reasonable inferences drawn therefrom. We conclude that he neither overlooked nor misconceived any material evidence. Rather, the trial justice carefully considered the controlling law on constructive possession, noted the parallel instances in which defendants have been found guilty of possession based solely on circumstantial evidence, and found that the totality of circumstances indicated that Portes had both knowledge of the cocaine and intent to exercise dominion and control over it. He found that "it absolutely stretches credulity to conclude that this defendant was simply a passive, non-participant in this venture." The trial justice was confident that the verdict did substantial justice, stating, "the evidence supported her conviction in my mind in ample fashion and beyond a reasonable doubt." Although defendant did not have exclusive possession of the premises in which the cocaine was discovered, based on the totality of circumstances, we hold that the trial justice correctly found that the evidence presented was sufficient to support charges of possession of cocaine and possession with intent to deliver. Portes lived in an apartment in which close to one quarter of a million dollars worth of cocaine and drug sale paraphernalia was discovered, in the bedroom where she slept and throughout the kitchen. A reasonable inference could be made that defendant utilized her home as the center of a drug venture. We agree with the finding of the trial justice.

### Deferred Ruling on Codefendant's Flight

 The defendant also insists that the trial justice's failure to admit evidence that codefendants Villanueva and Tejada fled the jurisdiction was unduly prejudicial and compromised the very core of her primary defense. According to her, this is so because the jury was unable to decide for themselves whether the men's flight was an indication of their guilt, thereby allowing an inference of her innocence.

The defendant mischaracterizes the actions of the trial justice with respect to his ruling on the admissibility of evidence regarding the flight of the codefendants. Prior to trial, the trial justice addressed a motion by the state seeking to bar this evidence on relevancy grounds. At the hearing on the motion, there was argument, based on the projected testimony, about whether such evidence might appropriately be presented at trial. The defendant fervently advocated that she was entitled to demonstrate that Villanueva and Tejada, not she, committed the offenses charged. The trial justice reserved ruling on the state's motion, stating: "It really depends on the way the case unfolds, and in the context which it might be brought up. I'm going to withhold that ruling until I have more information as we go forward."

At no time during the course of the trial did defendant seek to revisit the issue or to introduce evidence of the whereabouts of Tejada or Villanueva. What defendant characterizes as the trial justice's refusal to admit evidence is more accurately described as a mere deferral on ruling. The motion was never finally ruled upon be-

cause it was not subsequently brought to the court's attention. Therefore, this issue is not properly before us on appeal.

### Prosecutor's Statements at Closing Argument

██ Finally, defendant asserts that she was unduly prejudiced by improper comments that the prosecutor made during his final argument with respect to defendant's finances. After presenting evidence that Portes was unemployed as of October 1999, that she paid her $750 monthly rent on time and often in cash and that she had nice furnishings in her home, the state alluded to the fact that defendant must have been living off the fruits of cocaine sales. In his closing argument, the prosecutor stated, "Where is her money coming from?" and, after discussing her various expenses, pondered, "How is she affording this?" The defendant argues that these statements put her in a position in which she would be required to testify in order to rebut an inference that her income was derived from illegal sources. Therefore, she equates the state's actions with making an impermissible attack on defendant's failure to testify, which resulted in a violation of her constitutional right to a fair trial. Although she acknowledges that no objection was made at the time the statements were made, she asks this Court to apply to the instant matter the exception to the raise or waive rule that allows an issue to be preserved for appellate review when basic constitutional rights are involved.

██ "[F]or a defendant to preserve a question of prejudicial error in closing argument for our review, he [or she] must not only make an objection at the time, but must make a request for cautionary instructions," see State v. Burns, 524 A.2d 564, 570 (R.I.1987), or move for a mistrial. See State v. Monroe, 714 A.2d 620, 622

(R.I.1998) (mem.). If this procedure is not followed, the issue is not properly preserved for appeal. State v. Donato, 592 A.2d 140, 142–43 (R.I.1991). The defendant is correct in saying that this Court has recognized an exception to the raise or waive rule, which "applies only when the defendant's basic constitutional rights are at issue." State v. Estrada, 537 A.2d 983, 987 (R.I.1988). However, to qualify for this exception, a party also must satisfy the three-part test enunciated in State v. Burke, 522 A.2d 725, 731 (R.I.1987). Under Burke, the error complained of must consist of more than harmless error, the record must be sufficient to permit a determination of the issue, and counsel's failure to raise the issue at trial must be attributed to a novel rule of law that counsel could not reasonably have known at the time of trial. Id.

██ Even if defendant's argument involved a matter of constitutional proportion, her assertion of error falls short of satisfying the three-part test in Burke. Although the record may well be sufficient to make a determination on the issue, the prosecutor's statement did not rise to the level of beyond harmless error. Indeed, we find nothing unreasonably prejudicial in the prosecutor's argument. "A prosecutor is given considerable latitude in closing argument, as long as the statements pertain only to the evidence presented and represent reasonable inferences from the record." State v. Boillard, 789 A.2d 881, 885 (R.I.2002). The prosecutor's comments about defendant's source of income merely described an inference that the jury reasonably could have drawn from the evidence presented at trial.

Moreover, the defendant's assertion fails to satisfy the third part of the Burke test, since at no time does she allege that counsel's failure to raise the issue at trial was attributed to a novel rule of law that he

could not reasonably have known at the time of trial. Hence, we consider the issue waived.

## Conclusion

For the reasons stated above, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.