**STATE**

v.

**Thurston HORTON.**

**No. 2002–401–C.A.**

Supreme Court of Rhode Island.

May 5, 2005.

Diane Benevides, Esq., Hamden, CT, for Plaintiff.

Paula Rosin, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

FLAHERTY, Justice.

In November 2001, a jury found the defendant, Thurston Horton, guilty of one count of first-degree child molestation sexual assault for which he received a twenty-year sentence, consisting of eight years to serve, with the balance suspended with probation. On appeal to this Court, Horton advances three points of error as reasons for reversing his conviction. He contends that the trial justice committed reversible error when she overruled the defense's objections to certain comments made by the prosecutor during closing argument, that the trial

justice erred in denying the defendant's motion for a new trial based on the trial justice's weighing of certain testimony, and that the trial justice erroneously admitted into evidence pictures that had not been provided to the defendant during discovery. For the reasons set forth herein, we deny the appeal and uphold the defendant's conviction.

### Facts and Procedural History

One evening late in the spring of 2000, eight-year-old Tommy[1] was sexually assaulted in his home during a party hosted by his mother, Clara. During the party, the adult guests congregated primarily in the living room and dining room of Clara's apartment, while Tommy and several other children played in Tommy's bedroom. The party lasted well into the night and early morning. Tommy remained alone in his room, asleep, after the other children had gone home for the night. At some point during the night, Tommy woke from his sleep to find a man on top of him, sexually assaulting him by means of anal penetration. After Tommy began screaming and telling his assailant to stop, the man ceased his assault, put his clothes back on, and exited the room, returning minutes later with tissues. Joe Sorber, a guest at the party, entered the room to find a crying Tommy and defendant alone together. The child was removed from the room by his mother; he told the adults that he was afraid of defendant, who had tried to "mess with" him. Both Sorber and another partygoer, Wayne Thompson, said that they remained in the bedroom

and prevented Horton from leaving until the police arrived and arrested him.

Certain aspects of defendant's story are undisputed. Horton was an uninvited guest who knew neither the host nor her eight-year-old son, Tommy. At the suggestion of his cousin, Horton joined the party at approximately 2:30 a.m., after he had visited a few bars with a friend. He proceeded to dance with several women, one of whom later testified that she pushed him away after she became uncomfortable with his attempts to touch her. The defendant does not dispute that he later entered Tommy's bedroom and woke the child, or that the child became afraid of him. Horton claims that he entered the bedroom while looking for a bathroom, and that he awakened the sleeping child to ask for directions.

Both Wayne Thompson and Joe Sorber testified that around the time of the assault they witnessed Horton leaving the bathroom with tissues in his pants.[2] Sorber testified that he became curious about Horton's actions when Horton left the bathroom, but entered neither the kitchen nor the living room. Therefore, Sorber checked Tommy's room, where he saw the child crying on the bed with Horton standing beside him. At that point, Sorber called for Thompson, ordered Horton to remain where he was, and told someone in the house to call the police.

Soon after these events, the police arrived at the apartment and conducted a "show-up."[3] Tommy identified his assailant and the police arrested Horton. The responding officer testified that as he es-

---

1. "Tommy" is not the victim's real name. *Because of the young age of the child victim,* we have chosen to protect his identity.

2. Horton denied that he ever made it to the bathroom or that he carried tissues with him.

3. A "show-up" is a "type of pre-trial identification procedure in which a suspect is confronted by or exposed to the victim of or witness to a crime. * * * Commonly, it occurs within a short time after the crime or under circumstances which would make a lineup impracticable or impossible." Black's Law Dictionary 1380 (6th ed.1990).

corted Horton to the police cruiser, a "rag," which was later identified as toilet tissue, fell from Horton's pants. Tommy was brought to a local hospital, where he was examined for evidence of sexual assault. A forensic pediatrician, Betty S. Spivack, M.D., testified that in her opinion, and based on her education and training, Tommy's physical condition was consistent with a history of anal penetration within the previous forty-eight hours. Horton was charged with engaging in sexual penetration, namely penile and anal penetration, of Tommy, a person fourteen years of age or younger. After a trial, a jury found defendant guilty of first-degree sexual molestation. The defendant timely appealed from the judgment of conviction.

## Analysis

### I

### Closing Argument

The defendant first argues that the trial justice committed reversible error in overruling defense counsel's objections to two comments made by the prosecutor during closing argument. During his closing argument, the prosecutor made the following statement:

> "Who did it? Well, what do we have to say who did it? First of all, we have the testimony of [Tommy]. Now, keep in mind, [Tommy] at the time that this thing happened was about eight and one-half years old or so. And I had asked you early on during the voir dire process, could you base your verdict in a case like this on the testimony of a young boy, a child? You said you could. And the reason why I asked that, is because *children often times give differing versions of what happened.* They are not like adults. They don't expound upon details." (Emphasis added.)

In response, the defense simply stated "object to this," which the trial justice overruled. Neither the justice nor defense counsel expounded further on the matter, and defense counsel failed to request a cautionary instruction. The second prosecutorial comment complained of by the defense in the instant appeal was among the very last remarks of the prosecution's closing argument. The prosecutor summed up his closing by saying that "most children unfortunately have nightmares that there are monsters hiding under their bed. On June 11, [Tommy's] worst nightmare came true. When *this monster* climbed into his bed—." (Emphasis added.) The defense again objected, without detail, by asserting "object to that." The transcript reveals that there was no response by the trial justice.

 It is clear from the record that the defense objected to both of the above-mentioned prosecutorial comments. However, " '[f]or a defendant to preserve a question of prejudicial error in closing argument for our review, he [or she] must not only make an objection at the time, but must make a request for cautionary instructions' * * * or move for a mistrial." *State v. Portes,* 840 A.2d 1131, 1141 (R.I. 2004). "If this procedure is not followed, the issue is not properly preserved for appeal." *Id.* But, "[a]bsent a timely request for cautionary instructions," review is not necessarily precluded if it is "determined that such request for cautionary instruction would have been futile or any attempt to palliate the prejudice would have been ineffective." *State v. Lemon,* 478 A.2d 175, 181 (R.I.1984). An exception to the general rule requiring requests for cautionary instruction exists "only when the defendant's basic constitutional rights are at issue." *Portes,* 840 A.2d at 1141 (quoting *State v. Estrada,* 537 A.2d 983, 987 (R.I.1988)).

"However, to qualify for this exception, a party also must satisfy the three-part

test enunciated in *State v. Burke*, 522 A.2d 725, 731 (R.I.1987). Under *Burke*, the error complained of must consist of more than harmless error, the record must be sufficient to permit a determination of the issue, and counsel's failure to raise the issue at trial must be attributed to a novel rule of law that counsel could not reasonably have known at the time of trial." *Portes*, 840 A.2d at 1141.

■ In this case, it is obvious from the record that defendant failed to make a request for cautionary instructions on either of the comments in question. It cannot be said that to do so would have been futile, since the court did not previously overrule similar objections. Indeed, the trial justice sustained several other objections defendant's counsel made to the prosecution's closing argument. The question then arises about whether the two prosecutorial comments, and the trial justice's failure to sustain them, constituted error. It is well established that "[a] prosecutor is given considerable latitude in closing argument, as long as the statements pertain only to the evidence presented and represent reasonable inferences from the record." *State v. Boillard*, 789 A.2d 881, 885 (R.I.2002). "[W]hile there is no formula in law which precisely delineates the proper bounds of a prosecutor's argument, * * * prejudice obviously inheres if the remarks are totally extraneous to the issues in the case and tend to inflame and arouse the passions of the jury." *Id.* (quoting *State v. Mancini*, 108 R.I. 261, 273–74, 274 A.2d 742, 748 (1971)).

■ In this case, the prosecutor's statement that "children often times give differing versions of what happened," was not clearly outside the proper bounds of a prosecutor's argument, and was neither extraneous to the issues in the case nor intended to inflame or arouse the passions of the jury.[4] In *Boillard*, we held that a prosecutor's closing comments about inconsistencies in child witness testimony were "intended to rehabilitate the state's witnesses and to suggest rationales by which the jury could reconcile unfavorable testimony with the state's theory of the case * * *." *Boillard*, 789 A.2d at 885. Here, the prosecutor's comments similarly were aimed at clarifying certain inconsistencies in Tommy's testimony about the circumstances of his assault, and defendant's objections were rightly overruled.

■ We believe that the prosecutor's characterization of Thurston Horton as a "monster" requires further analysis. We begin by stating firmly that we do not condone tactics that serve to demonize a particular defendant. As we previously have stated, "[a] criminal trial cannot be allowed to become like a day at a Roman Coliseum when an individual's fate was determined by the cheers or jeers of the crowd." *State v. Mead*, 544 A.2d 1146, 1150 (R.I.1988). However, even though we admonish the trial justice for her failure to respond to Horton's objections to the comment, and believe the phraseology inappropriate, we do not find that the prosecution's use of the term "monster" satisfies the requirements of the *Burke* test, because the comment did not rise beyond the level of harmless error. Numerous cases, both within and from outside of Rhode Island, have determined that while incidents of prosecutorial name-calling during closing arguments are inappropriate and unacceptable, such comments may be harmless in the face of overwhelming evidence of the defendant's guilt and instructions by the trial justice that statements made by counsel during closing arguments

---

4. In general, however, prosecutors, who are clothed with the authority of the state, should refrain from uttering broad, sociological generalizations.

are not evidence. *See generally Kellogg v. Skon,* 176 F.3d 447, 452 (8th Cir.1999) (References to the defendant by the prosecution during closing argument as "monster," and "sexual deviant," "have no place in the courtroom" but did not make the trial fundamentally unfair. "The weight of the evidence was heavy, and there is no reasonable probability that the verdict would have changed absent the comments, even considering the cumulative effect of the prosecutor's remarks."); *State v. Simpson,* 658 A.2d 522, 528 (R.I.1995) (prosecutor's calling the defendant "scum" was inappropriate but harmless); *State v. Comer,* 165 Ariz. 413, 799 P.2d 333, 346, 347 (1990) (prosecutor's closing argument references to the defendant as "monster," and "filth" "exceeded the bounds of appropriate closing argument * * * [but] the error was harmless beyond a reasonable doubt. In light of the overwhelming evidence of appellant's guilt, it is evident that the prosecutor's comments did not contribute to the verdict."); *State v. Smith,* 599 N.W.2d 344, 353–55 (S.D.1999) (prosecutor's comments referring to the defendant as a "monster," "sexual predator," and "pervert," though "abhorrent and misconduct," did not rise to prejudicial level and were very unlikely to have altered the jury's verdict).

 Despite the inappropriate character of the prosecutor's "monster" comment, we do not consider its use or the trial justice's failure to rule on defendant's objection to rise beyond the level of harmless error. Further, we fail to discern anything in defendant's argument that

meets the *Burke* requirement that defendant's failure to adequately preserve the issue for appeal must be attributed to a novel rule of law that defense counsel could not have known at the time of the trial. In this case, the evidence against Horton was more than abundant to prove his guilt, and the trial justice instructed the jury that when it deliberated, it could consider "only the evidence." Just before closing arguments, the trial justice further instructed that "counsel are not permitted during the course of closing statements to offer any personal opinions as to any aspect of the testimony or evidence. * * * If you hear any personal opinions stated, you are instructed to disregard them." Despite the impropriety of the prosecutor's comments, we do not believe that defendant preserved the issue for appeal, and we consider the issue of the prosecutor's closing statements to have been waived by defendant.

## II

### Motion for a New Trial

 The defendant further argues that the trial justice erroneously denied his motion for a new trial based on the state's failure to prove beyond a reasonable doubt that Horton was Tommy's assailant. Horton argues that certain inconsistencies in witness testimony, including that of the victim, rendered proof beyond a reasonable doubt unachievable, and he contends that the trial justice improperly cured such inconsistencies with defendant's own testimony.[5] It is well established that when

---

5. The relevant section of the trial justice's ruling on the motion for a new trial states, in pertinent part:

"The testimony about [Tommy] observing the defendant by light of the television was fraught with inconsistencies. [Tommy] may well not have seen his perpetrator sufficiently to make an identification of him.

His identification of the defendant's clothes and identification of the defendant in the police car and at a subsequent proceeding may have been the product of suggestion. Joe Sorber and Wayne Thompson's descriptions of finding the defendant in the room with [Tommy] crying and partially undressed were contradicted by [Tommy's]

"deciding a motion for a new trial, the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Gomez,* 848 A.2d 221, 234 (R.I.2004) (quoting *State v. Otero,* 788 A.2d 469, 472 (R.I.2002)). "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." *Id.* "If, however, 'the trial justice finds that the state has failed to sustain its burden of proof, a new trial must be ordered.' " *Id.*

■ When reviewing a trial justice's decision on a motion for a new trial, this Court will examine whether the trial justice applied the appropriate standards in her ruling. "If the trial justice has complied with this procedure and articulated adequate reasons for denying the motion, his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." *Id.* After evaluating the evidence

and determining that evidence existed to prove both that Tommy had been sexually assaulted and that Horton was the perpetrator, the trial justice stated that "this court cannot say beyond a reasonable doubt that Tommy could identify the defendant in his room that night or that anyone else who testified at trial saw or heard anything that confirmed the defendant's direct involvement in a sexual assault." This alone, argues Horton, necessitated the granting of the motion for a new trial. However, the trial justice went a step further and used Horton's own testimony as a means of filling in the gaps in certain witnesses' testimonies to satisfy herself of Horton's guilt beyond a reasonable doubt. "The deficiencies in this evidence, however, in this [c]ourt's judgment, are cured by the defendant's own testimony," in which he admitted to being in Tommy's bedroom, touching him on the shoulder, and instilling fear in him. Despite Horton's denial of the assault, the trial justice found that Horton's own admissions "placed the defendant squarely on Tommy's bed along with [Tommy] at

own testimony (references in the hospital emergency room record) and frankly seem engineered. The words they put in the defendant's mouth did not ring true. The testimony about the toilet paper in the defendant's pants were exaggerated and inconsistent as to timeframe. No rag was testified to by the arresting officer that was ever seized nor exists in the evidence in this case. In short, recognizing the weaknesses in these witnesses' testimony with regard to the issue of identification and the events immediately surrounding the evidence of the assault in question as referenced by the defense during Mr. Levy's argument with respect to this motion, this Court cannot say beyond a reasonable doubt that Tommy could identify the defendant in his room that night or that anyone else who testified at trial saw or heard anything that confirmed the defendant's direct involvement in a sexual assault. The emergency room report in fact referenced that [Tommy's]

cries weren't heard until after the perpetrator had left. This testimony was clearly designed to buttress [Tommy's] case. It was clear to this Court that much of the testimony of witnesses, particularly with regard to Joe Sorber and Wayne Thompson was fraught with exaggeration and inconsistencies including most memorably the testimony of Joe Sorber trying to explain how he could have observed [Tommy's] underwear down, the way he was seated on the bed, and Wayne Thompson's testimony with regard to observing kids asleep on the bed after he saw the defendant in the bedroom after the assault in question. Yet, these witnesses, in this Court's judgment did see things that made them suspicious of the defendant's involvement and that indicated that he was the man [Tommy] was referring to when he was sobbing after the fact and saying that he was afraid of the man."

the time of this sexual assault," and "show that the defendant accepts responsibility for the fear and hysteria that Tommy demonstrated right after the defendant was alone with him in the bedroom. * * * The admissions show guilty knowledge."

In using Horton's own testimony to supplement areas where evidence adduced by other witnesses fell short, the trial justice referred to *State v. Mattatall,* 603 A.2d 1098 (R.I.1992) for the proposition that

> "when a defendant elects to testify, he runs the very real risk that if disbelieved, the trier of fact may conclude that the opposite of his testimony is the truth.* * * As long as there exists some other evidence of the defendant's guilt, disbelief of a defendant's own sworn testimony is sufficient to sustain a finding of guilt. * * * 'A trier of fact is not compelled to accept and believe the self serving stories of vitally interested defendants. Their evidence may not only be disbelieved, but from the totality of the circumstances, including the manner in which they testify, a contrary conclusion may be properly drawn.' "
> *Id.* at 1109 (quoting *United States v. Cisneros,* 448 F.2d 298, 305 (9th Cir. 1971)).

The defendant's appeal from the denial of his motion for a new trial rests primarily on the trial justice's reliance on *Mattatall.* Horton contends that this reliance is misplaced in this case because, without defendant's testimony, the evidence was insufficient to establish Horton's guilt beyond a reasonable doubt. Horton essentially argues that "disbelief of a defendant's testimony may supplement already existing evidence and help make the evidence in a borderline case sufficient," *United States v. Tyler,* 758 F.2d 66, 70 (2nd Cir.1985), only when "the evidence apart from the incredibility of the defendant's testimony

was sufficient or very close to sufficient." *Id.* at 69.

Horton relies on the United State Supreme Court case *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) for a similar, though misplaced, argument. Horton points to the Court's statements in that case that "[w]hen the testimony of a witness is not believed, the trier of fact may simply disregard it. Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion[,]" *id.* at 512, 104 S.Ct. 1949, to support his contention that the trial justice erroneously discredited Horton's denial of involvement in the assault as affirmative evidence of his guilt. In *Bose,* a product disparagement case, the Supreme Court found that despite a determination that a witness had made a false statement, the falsity of the statement alone did not constitute evidence that the statement had been made with actual malice on the part of the witness. We do not agree with Horton's contention that this appeal presents a similar issue. Here, the trial justice did not use Horton's denial as the sole means of determining his guilt. Instead, the trial justice used defendant's admissions as a means of supplementing independent evidence of his guilt, despite his assertion of innocence.

Horton also relies on a Kansas Supreme Court case, *State v. Williams,* 229 Kan. 646, 630 P.2d 694 (1984) for the proposition that a defendant's conviction may not be based on using the converse of his testimony as affirmative evidence against him. In an appeal of a conviction of being an accomplice to rape and murder, the Kansas Supreme Court held that absent any evidence or "admissions suggesting guilt on [the defendant's] part for any of the offenses with which he was charged," *id.* at 708, "the jury had no authority by reason

of its disbelief of the appellant's testimony to consider the converse of the appellant's testimony [that he was in his own apartment, not that of the victim on the night of the crime] as affirmative evidence against him and base a conviction thereon." *Id.* Here, by contrast, the trial justice concluded that ample evidence, besides Horton's admissions, suggested his guilt, and she weighed parts of his testimony against his ultimate denial of guilt when making her ruling on a motion for a new trial. The defendant likens his situation to that in *Williams*, and argues that unlike *Mattatall*, in which the state presented sufficient evidence of the defendant's guilt independent of the defendant's testimony, independent evidence of Horton's guilt is lacking.

■ We disagree. "When confronted with a motion for a new trial, the trial justice, while exercising independent judgment and considering all material evidence in light of the charge given to the jury, must appraise the weight of the evidence and assess the credibility of witnesses." *Mattatall*, 603 A.2d at 1108. "If in this independent assessment the trial justice determines that the evidence presented at trial is sufficient for the jury, as factfinders, to conclude that it proves guilt beyond a reasonable doubt, the motion for a new trial must be denied." *Id.* The trial justice in this case followed the appropriate procedure and, considering both the weight of the evidence and the credibility of the witnesses, rightly denied Horton's motion for a new trial. Properly, the trial justice considered the weaknesses in certain witness's testimony regarding the issue of identification and the events immediately surrounding the assault. However, she found the additional evidence, including defendant's testimony, to be sufficient for a jury to find guilt beyond a reasonable doubt.

■ The trial justice weighed, among other things, Tommy's testimony about the assault itself, the physical and medical evidence of the assault, defendant's uninvited presence and behavior at the party that night, his proximity to and presence in the child's bedroom, and witness testimony about defendant's suspicious behavior and presence in the room with the crying child, who then identified defendant as having "mess[ed] with" and scared him. The trial justice acknowledged exaggeration, embellishment, and inconsistencies in witness testimony, particularly with regard to Tommy's memory of the chain of events during and immediately after the assault. But, the trial justice determined that substantial independent evidence of Horton's guilt existed, and any remaining deficiencies were cured by his own testimony. Although Horton admitted to his presence in the child's bedroom at the time of the assault, and acknowledged that he upset the child, he denied sexually assaulting Tommy. In our opinion, when she decided the motion for a new trial, the trial justice was well within her rights to "accept or reject conflicting testimony and draw all reasonable inferences therefrom." *Mattatall*, 603 A.2d at 1108. Thus, the trial justice accepted defendant's admissions about his presence alone with the child in the child's bedroom, but disbelieved his ultimate denial of guilt. When she weighed the evidence along with his testimony, she concluded that the opposite of Horton's testimony about the sexual assault was the truth. Because the trial justice neither overlooked nor misconceived material evidence and was not otherwise clearly wrong, we deny Horton's appeal of his motion for a new trial.

### III

### Rule 16 Violations

■ The third leg of defendant's appeal relates to alleged discovery viola-

tions of Rule 16 of the Superior Court Rules of Criminal Procedure. Specifically, Horton contends that the trial justice erred in overruling his objection when the state introduced into evidence two pictures not provided to the defense in response to discovery requests. "The Rhode Island criminal discovery rule is a broad, reciprocal discovery device that requires the state to disclose the existence of all statements, whether reduced to writing or not, and the identity of all witnesses whom the state expects to call in support of its direct case." *State v. O'Dell,* 576 A.2d 425, 428 (R.I.1990). "Rule 16 is very clear. * * * The prosecutor does not have the authority to interpret the rule and decide what constitutes substantial compliance or equivalent compliance." *State v. Verlaque,* 465 A.2d 207, 214 (R.I.1983).

In this case, the prosecution concedes that it did not give to defendant two documents/pictures that later were introduced into evidence. During a videotaped interview of Tommy at the Child Advocacy Center, the interviewer held up four pieces of paper and placed them in front of Tommy. The papers consisted of anatomically correct drawings of an African–American adult male and an African–American male child. For both the child and adult there were two pages, one depicting the front of the body, the other depicting the rear. In view of the cameras, Tommy proceeded to circle the hands and genitals of the adult male, and the back and buttocks of the child, indicating the body parts of the assailant that had touched him, and where. In response to a discovery request pursuant to the Rules of Criminal Procedure, the state provided the papers depicting the back of the adult male and the front of the child to the defense, but neglected to include the male front and child rear depictions that included Tommy's circles. During the state's redirect of Tommy, defendant objected both when the prosecution showed the circled pictures to Tommy and when the state attempted to admit the pictures as exhibits. The trial justice overruled defendant's objections, reasoning that there was no Rule 16 violation that would preclude admission of the pictures. She reasoned that the defense was on fair notice of all four pieces of paper, via their visible presence in the videotape.[6] The defendant now appeals this decision, claiming reversible error.

There is no doubt that under the broad reach of Rule 16, all four pictures should have been provided to the defense, and the state's failure to provide two of the pages, even if an innocent mistake, constitutes a discovery violation. However, it is well established under Rhode Island law that "[t]he trial justice is in the best position to determine when to apply * * * sanctions for a Rule 16 violation and can best assess the feasibility of mitigating any resulting harm with the appropriate remedy." *State v. Pona,* 810 A.2d 245, 248 (R.I.2002) (citing *State v. Musumeci,* 717 A.2d 56, 60 (R.I.1998)). "A trial justice should consider the following four factors when imposing a sanction for failure to comply with Rule 16: '(1) the reasons for the nondisclosure or other violation, (2) any prejudice caused to the opposing party, (3) the feasibility of rectifying any prejudice, and (4) any other relevant factors.' " *Id.* (quoting *Musumeci,* 717 A.2d at 60). "Therefore, the trial justice's ruling on the appropriate sanction should not be overturned absent a clear abuse of discretion." *Id.* (citing *Musumeci,* 717 A.2d at 60).

**6.** The defense admits to having viewed the videotape. Thus, there is no dispute that the defense was on notice as to the presence of all four pieces of paper.

Although the trial justice in this case incorrectly failed to label the state's action as a Rule 16 violation, we apply the same standard as if she had explicitly made such a ruling. We see no abuse of discretion in the trial justice's decision not to sanction the state for its failure to provide the defense with the two pictures. Instead, the trial justice clearly accepted the state's explanation that its failure was an inadvertent oversight. She took into consideration the fact that the videotape clearly shows four pictures, and that the videotape transcript indicates that Tommy circled parts on the pictures that were not provided to the defense. These facts put the defense on notice and the subsequent introduction of the pictures should not have taken the defense by surprise.[7] Further, although the trial justice found no prejudice to the defendant, she did "out of an abundance of caution" require that Tommy be shown the docu-ments and identify the circles as his own before they were shown to the jury. Even though the prosecution was under an obligation to provide all four pictures to the defendant, its failure to do so, in light of the factors considered by the trial justice, did not prejudice the defendant, nor was the trial justice's decision on the matter erroneous. For these reasons, we deny Horton's appeal on the issue of Rule 16 violations.

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court, to which we remand the papers in this case.

---

7. "Rule 16 * * * seeks to promote '[b]roader discovery by both the defense and the prosecution [in order to] contribute to the fair and efficient administration of criminal justice by aiding in informed plea negotiations, *by minimizing the undesirable effect of surprise at trial,* and by otherwise contributing to an accurate determination of the issue of guilt or innocence.' " *State v. Musumeci,* 717 A.2d 56, 60 (R.I.1998) (quoting *State v. Coelho,* 454 A.2d 241, 244 (R.I.1982)). (Emphasis added.)