**STATE**

v.

**William GONSALVES.**

No. 87–362–C.A.

Supreme Court of Rhode Island.

Feb. 15, 1989.

James E. O'Neil, Atty. Gen., Annie Goldberg, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

MURRAY, Judge.

A Providence County jury found the defendant, William Gonsalves (Gonsalves), guilty of manslaughter in connection with the shooting death of his brother. He appeals.

The facts as they relate to this incident of fratricide are set forth below. On April 8, 1985, defendant and his brother, Anthony Gonsalves (Anthony), became embroiled in a bitter argument while at the Cape Verdean Club in East Providence, Rhode Island. Following this altercation, defendant waited for Anthony outside the club in his car. Anthony emerged from the barroom shortly after midnight. Concerned that the brothers might create a disturbance, the head steward of the club peered through the front window of the barroom and observed Anthony leaning into the passenger-side window of defendant's vehicle and talking to defendant. Three minutes later he saw Anthony retreat from the car, shielding his face with his hands. A single gunshot rang out, Anthony fell to the ground, and defendant sped away in his automobile. Anthony was pronounced dead at the Rhode Island Hospital shortly thereafter.

Members of the East Providence police department arrived at the scene within minutes of the shooting. Sergeant John Lynch spoke to the head steward, a former special officer with the East Providence police department who knew both brothers personally. Lynch obtained a detailed description of defendant and his vehicle as well as general background information. Relying on this information, the police then proceeded to the home of defendant's parents. Upon arrival defendant's father told the police that he believed defendant to be with his longtime girlfriend, Anna Hall, at her Prospect Heights apartment in Pawtucket. The defendant's father accompanied the police to Hall's apartment because he was unsure of the correct street address. The East Providence police next rendezvoused with the Pawtucket police, and ultimately a group of officers surrounded Anna Hall's apartment after receiving word that defendant's car had been discovered in the vicinity.

Shortly after 1 a.m. the police knocked on the door to apartment No. 366, believing it to be Anna Hall's residence. A woman emerged from apartment 367. She was ordered back into her apartment. The police continued to bang on door No. 366. Again the woman exited from her apartment. When asked if she was Anna Hall, she responded affirmatively. As the police approached Hall, Lieutenant William Sloyer looked into the apartment through the kitchen windows and observed Gonsalves sitting on a couch in the living room. Lieutenant Sloyer grabbed Hall by the arm and pulled her from the apartment entrance in the event that gunfire was exchanged. Pistols drawn, the police called to defendant several times; when no response was forthcoming, they stormed the apartment and arrested Gonsalves. During the course of the arrest, a brief struggle ensued and a number of .38 caliber bullets fell from defendant's jacket pocket onto the floor. As Lieutenant Sloyer was gathering the bullets, Sergeant Lynch advised Gonsalves of his constitutional rights. The defendant replied, "Fuck you." Gonsalves also interrupted Lieutenant Sloyer midstream while advising him of his *Miranda*

rights, stating, "You're too fucking late." When informed that he was under arrest for shooting his brother, defendant again responded with a barrage of profanities, stating, "Fuck him" and "I don't give a fuck." The police searched the immediate area after this incident but found no weapon.

At a pretrial hearing, defendant moved to suppress physical evidence and statements made to police on state and federal constitutional grounds. The trial justice denied defendant's motion. On March 9, 1987, the jury returned a verdict of guilty on the charge of manslaughter. The trial court sentenced defendant to ten years at the Adult Correctional Institutions on the work release program—ten years suspended, ten years' probation. Although defendant raises several interesting points in his brief, we need only address the determinative aspect of his main argument.

The defendant argues that the entry and the arrest were unlawful without benefit of a warrant and that the trial justice should have excluded the bullets and the inculpatory statements from evidence under the Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution. The defendant claims that no exigent circumstances existed to justify the warrantless entry and arrest. We disagree.

This court has addressed the warrant requirement of the Federal and State Constitutions on numerous occasions. *See, e.g., State v. Eddy,* 519 A.2d 1137 (R.I. 1987); *Duquette v. Godbout,* 471 A.2d 1359 (R.I.1984); *State v. Benoit,* 417 A.2d 895 (R.I.1980). Absent consent or exigent circumstances, police officers must obtain a warrant before entering a private dwelling house to effect an arrest or search for evidence. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *State v. Bailey,* 417 A.2d 915 (R.I.1980). In *State v. Jennings,* 461 A.2d 361 (R.I. 1983), we defined the exigent circumstances exception to include situations in which "evidence is likely to be lost, destroyed, or removed during the time required to obtain a warrant and when, because of the circumstances, it is difficult to secure a warrant, a warrantless entry and search may be justified. This exception also encompasses the situation in which police believe a person within requires immediate assistance or other victims or intruders may still be present. 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'" *Id.* at 366 (quoting *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978)). Warrantless entries are justified to protect not only victims and fellow police officers, but also innocent bystanders and suspects themselves.

Whether circumstances rise to the level of exigency is determined by referring to the facts known to the police at the time of the arrest. *See United States v. Williams,* 612 F.2d 735, 739 (3rd Cir.1979). "[T]he police [must] have an objective, reasonable belief that a crisis can only be avoided by swift and immediate action." *Duquette v. Godbout,* 471 A.2d at 1363 (citing *State v. Benoit,* 417 A.2d at 900). We find little merit to defendant's contention that the police had no reason to believe that Gonsalves was randomly violent or in possession of a firearm.

On the facts of the case before us, police officers promptly responded to the report of a shooting. They received information from a credible eyewitness that defendant had shot his brother. These facts alone established a reasonable basis for investigating authorities to infer that defendant was capable of irrational and violent behavior. As a result of an ongoing investigation in the field, the police located Gonsalves at Anna Hall's apartment less than one hour after the shooting. We conclude that the police reasonably believed defendant to be "armed and dangerous" and in a highly emotional state after shooting his brother.

We also reject the argument that there was no evidence that defendant intended to harm Anna Hall. Intent to harm is not at issue in these cases. The proper line of

inquiry is whether the police reasonably believed, relying upon facts known by them at the time of arrest, that the warrantless intrusion was necessary to preserve life or avoid serious injury. In the case at bar the police feared that defendant had a gun. Lieutenant Sloyer removed Anna Hall from the entrance to the apartment because she was "in the line of fire." The lieutenant testified that defendant refused to comply with his instructions to place both hands in plain view. Because Gonsalves' left hand was not visible, events leading to defendant's arrest happened quickly. Considering the circumstances of the earlier shooting, we believe the risk of injury or death was palpable. The presence of police officers might have provoked Gonsalves to violence against Anna Hall, the officers themselves, or others in the building. After they apprehended defendant, the police obtained Anna Hall's consent to search the first floor of the apartment. When this search proved fruitless, Sergeant Lynch drafted two search warrants, one for Anna Hall's apartment and another for defendant's vehicle, which were duly signed and executed. We believe that the police pursued the most prudent course of action in this tense situation. The existence of exigent circumstances justified the warrantless entry and arrest.

An important precept underlies our decision. In emergency situations calling for prompt police action, this court has continually stressed the importance of practicability in obtaining a warrant in the circumstances of each case. *Duquette v. Godbout,* 471 A.2d at 1363; *State v. Benoit,* 417 A.2d at 901. Unlike cases involving "planned" arrests, *Steagold v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *United States v. Morgan,* 743 F.2d 1158 (6th Cir.1984); *State v. Beaumier,* 480 A.2d 1367 (R.I.1984), the defendant's arrest stemmed from an ongoing investigation in the field. *See* 2 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 6.1(f) (2d ed.1987) (suggesting greater reluctance to fault police for warrantless arrests in ongoing field investi-

gations). Swift action was imperative. Any delay in obtaining a warrant at one o'clock in the morning could have ignited an already volatile situation. That no weapon was found on the defendant's person is irrelevant. The police reasonably believed Gonsalves to be armed and dangerous in these circumstances. We hold that the trial justice committed no error in ruling that the defendant was arrested lawfully and the verbal and tangible evidence was properly admitted.

For the foregoing reasons the defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed. The papers in this case are remanded to the Superior Court.