**Supreme Court**
No. 2011-178-C.A.

State               :

v.               :

Dean DeRobbio et al.      :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Indeglia, for the Court.**  For the first time, we are called upon to interpret the Edward O. Hawkins and Thomas C. Slater Medical Marijuana Act, G.L. 1956 chapter 28.6 of title 21 (Medical Marijuana Act or Act).  The State of Rhode Island (state) appeals from a pretrial order dismissing a five-count criminal information, filed against the defendants, Dean DeRobbio and Joseph Joubert.  On appeal, the state contends that the hearing justice committed reversible error in determining that insufficient probable cause existed to believe that the defendants had committed various narcotics-related offenses.  The defendants assert that their possession of marijuana was legal under the Act.  After reviewing the record and considering the parties' written submissions and oral arguments, we vacate the judgment of the Superior Court and remand the papers to it with instructions to conduct further proceedings consistent with this opinion.

# I

## Facts and Travel

On June 7, 2010, defendants were charged with (1) possessing marijuana with the intent to deliver it in violation of Rhode Island's Uniform Controlled Substances Act (CSA), G.L. 1956

§ 21-28-4.01(a)(4)(i) (count 1); (2) manufacturing marijuana in violation of § 21-28-4.01(a)(4)(i) (count 2); and (3) conspiracy to violate the CSA in violation of § 21-28-4.08 (count 5). In the same information, DeRobbio was also charged with committing a crime of violence—the above-referenced narcotics offenses[1]—while having available a firearm in violation of G.L. 1956 § 11-47-3 (count 3) and with the unlawful possession of Vicodin in violation of § 21-28-4.01(c)(2)(i) (count 4).[2]

The charges stemmed from a warranted search of DeRobbio's home in Cranston, on January 21, 2010. Before executing that search, Cranston police detectives set up surveillance of DeRobbio's home. Shortly thereafter, DeRobbio and Joubert exited the home and entered a vehicle, which an officer was directed to stop. During this stop, the officer advised DeRobbio and Joubert that he had a search warrant for DeRobbio's home. DeRobbio and Joubert then presented the officer with registry identification cards issued to them under the Act, identifying them as a qualifying patient and DeRobbio's primary caregiver, respectively.[3] Joubert's registry identification card listed DeRobbio as his only patient. Soon after, detectives executed the search warrant of DeRobbio's home.[4] That search also revealed a registry identification card

---

[1] Pursuant to G.L. 1956 § 11-47-2(2), a "crime of violence" includes, among other things, "any felony violation involving the illegal manufacture, sale, or delivery of a controlled substance, or possession with intent to manufacture, sell, or deliver a controlled substance * * *."

[2] In its full brief to this Court, the state abandons its appeal of the hearing justice's dismissal of count 3. In DeRobbio's brief to this Court, he concedes that the hearing justice erred in dismissing count 4. We agree, and direct that it be reconsidered on remand.

[3] Pursuant to the Edward O. Hawkins and Thomas C. Slater Medical Marijuana Act, G.L. 1956 chapter 28.6 of title 21 (Act), a "[r]egistry identification card" is a document issued by the Rhode Island Department of Health that identifies a person as a registered qualifying patient or a registered primary caregiver. Section 21-28.6-3(11). Pursuant to § 21-28.6-6(d), a qualifying patient may have no more than two individual primary caregivers. The Act will be discussed more fully below. See part I-A, infra.

[4] On appeal, defendants do not challenge the validity of this search.

issued to Joubert's mother, Marie Joubert (Mrs. Joubert), which listed her as DeRobbio's primary caregiver.

That same day, police contacted Mrs. Joubert regarding the marijuana found at DeRobbio's home. According to the police report, she told police that she was a licensed medical marijuana provider, that she was "aware" of the marijuana grown at DeRobbio's home, and that twenty-four of the marijuana plants located there belonged to her. She further explained that she had been growing that marijuana for her two patients, DeRobbio and another person whose name she could not remember. However, when asked if she could specify which marijuana plants were hers, she stated that they were "mixed in with the other plants," that she had not seen them grow, and that she had never actually set foot inside DeRobbio's home. Mrs. Joubert was not charged in connection with this matter.

The above-referenced search of DeRobbio's home revealed in pertinent part: thirty-three marijuana plants; thirty-nine marijuana seedlings without any visible buds; 31.8 grams of marijuana in a plastic container in the freezer; 39.6 grams of marijuana in a plastic freezer bag in the bedroom; 2.4 grams of marijuana in a sandwich bag; 12.1 grams of "burnt" marijuana in a prescription bottle; thirty-three Vicodin tablets in another prescription bottle; and seven Vicodin tablets in a nightstand in the bedroom.[5] According to the police reports, the mature marijuana plants and seedlings were discovered in two separate "grow rooms" located in DeRobbio's windowless basement. These rooms were equipped with fans, timers, high-wattage lights, humidifiers, a ventilation system, filters, and a calendar with a schedule indicating when to care for the plants.

---

[5] A total of 85.9 grams of marijuana was found at DeRobbio's home. Since the Act quantifies usable marijuana in terms of ounces, we note that this amount equates to approximately 3.03 ounces of usable marijuana. See § 21-28.6-4(a), (d).

On January 5, 2011, DeRobbio moved to dismiss the criminal information as to all counts; Joubert later joined in that motion. In his supporting memorandum, DeRobbio relied on an affirmative defense and dismissal provision set forth in the Act.

Before reciting defendants' arguments in their joint motion to dismiss, as well as their arguments before this Court in support of the hearing justice's decision to grant that motion, we first provide a brief overview of the Medical Marijuana Act as it relates to this appeal.

## A

### The Medical Marijuana Act

Enacted by the General Assembly in 2006,[6] the Act contains legislative findings declaring that "[s]tate law should make a distinction between the medical and nonmedical use of marijuana." Section 21-28.6-2(5). As such, "the purpose of [the Act] is to protect patients with debilitating medical conditions, and their physicians and primary caregivers, from arrest and prosecution, criminal and other penalties, and property forfeiture if such patients engage in the medical use of marijuana." Id.

To that end, the Act allows certain Rhode Island residents the right to possess "an amount of marijuana that does not exceed twelve (12) mature marijuana plants and two and one-half (2.5) ounces of usable marijuana" for the medical use thereof. Section 21-28.6-4. In order to qualify, those residents (defined as "qualifying patient[s]") must have been (1) diagnosed by certain medical practitioners as having a debilitating medical condition and (2) issued a registry identification card by the Rhode Island Department of Health (DOH). Sections 21-28.6-3(10); 21-28.6-4(b). The Act also grants qualifying patients the right to possess "a reasonable amount

---

[6] P.L. 2005, ch. 442 § 1 (enacted Jan. 3, 2006).

of unusable marijuana, including up to twelve (12) seedlings, which shall not be counted toward the limits in this section." Section 21-28.6-4(e).

The Act defines a "[m]ature marijuana plant" as one "which has flowers or buds that are readily observable by an unaided visual examination." Section 21-28.6-3(6). "'Usable marijuana' means the dried leaves and flowers of the marijuana plant, and any mixture or preparation thereof * * *." Section 21-28.6-3(14). Distinguished from usable marijuana, "[u]nusable marijuana" consists of "marijuana seeds, stalks, seedlings, and unusable roots." Section 21-28.6-3(13).

Likewise, the Act allows a primary caregiver (defined by § 21-28.6-3(9) as a natural person at least twenty-one years of age who has been issued a registry identification card from the DOH) the right to possess "an amount of marijuana which does not exceed twelve (12) mature marijuana plants and two and one-half (2.5) ounces of usable marijuana for each qualifying patient to whom he or she is connected through the [DOH's] registration process." Section 21-28.6-4(d). Further, primary caregivers also have the right to possess "a reasonable amount of unusable marijuana, including up to twelve (12) seedlings, which shall not be counted toward the limits in this section." Section 21-28.6-4(e).

Although a primary caregiver may assist up to five qualifying patients with their medical use of marijuana, at no time may a primary caregiver possess an amount of marijuana in excess of twenty-four marijuana plants and five ounces of usable marijuana for those qualifying patients. Sections 21-28.6-3(9); 21-28.6-4(n). Additionally, the Act permits each qualifying patient to have no more than two primary caregivers. Section 21-28.6-6(d).

The Act also contains an affirmative defense and dismissal provision, which, as noted above, served as the basis of defendants' joint motion to dismiss. Section 21-28.6-8(b) provides

that "[a] person may assert the medical purpose for using marijuana in a motion to dismiss, and the charges shall be dismissed following an evidentiary hearing * * *" if the defendant shows the following elements listed in § 21-28.6-8(a):

> "(1) The qualifying patient's practitioner has stated that, in the practitioner's professional opinion, after having completed a full assessment of the person's medical history and current medical condition made in the course of a bona fide practitioner-patient relationship, the potential benefits of using marijuana for medical purposes would likely outweigh the health risks for the qualifying patient; and
> "(2) The person and the person's primary caregiver, if any, were collectively in possession of a quantity of marijuana that was not more than what is permitted under this chapter to ensure the uninterrupted availability of marijuana for the purpose of alleviating the person's medical condition or symptoms associated with the medical condition."

## B

## Motion to Dismiss

In a memorandum supporting their joint motion to dismiss, defendants averred that the marijuana found at DeRobbio's home did not exceed the limits set forth in the Act. Referring to the language cited above, defendants asserted that the phrase "collectively in possession of a quantity of marijuana" clearly allowed DeRobbio, Joubert, and Mrs. Joubert, to collectively possess the entirety of the marijuana at issue. See § 21-28.6-8(a).

The defendants also pointed out that, under the terms of the Act, qualifying patients and primary caregivers may "possess a reasonable amount of unusable marijuana, including up to twelve (12) seedlings, which shall not be counted toward the limits in this section." Section 21-28.6-4(e). Countering the state's argument that they possessed a quantity of thirty-nine seedlings—three greater than a collective possession theory would even allow—defendants argued that the photographic evidence provided by the state did not clearly show which plants

constituted seedlings. Although the Act limits each qualifying patient's or caregiver's possession to twelve seedlings, he or she may possess a "reasonable amount of unusable marijuana," which is not quantified under the terms of the Act. The defendants argued that some of the unusable marijuana collected at DeRobbio's home did not constitute seedlings, but rather constituted "dead leaves." Since the Act does not specifically limit the amount of unusable marijuana (apart from seedlings), defendants contended that their collective possession of unusable marijuana did not violate the Act.

Further, defendants argued in the alternative that, at worst, the phrase "collectively in possession" was ambiguous. Citing precedent from this Court, defendants asserted that, in cases where a criminal statute is deemed ambiguous, the rule of lenity must be applied, and accordingly, the criminal information should be dismissed.

The state objected to defendants' motion to dismiss on February 28, 2011. In an accompanying memorandum, the state conceded that defendants were valid medical marijuana cardholders, but argued that they violated the medical marijuana possession limits set forth in the Act. The state contended that the Act did not allow for collective possession of marijuana among qualifying patients and primary caregivers. Thus, the marijuana grown at DeRobbio's home could not be split up between DeRobbio, Joubert, and Mrs. Joubert. According to the state, the entire amount of marijuana found at DeRobbio's home was ascribed to DeRobbio. Therefore, the state explained, DeRobbio violated the limits set forth in the Act. Similarly, applying the same reasoning to Joubert's marijuana possession, the state also argued that Joubert violated the Act by his possession of the entirety of the marijuana, because the marijuana could not be allocated between him, DeRobbio, and Mrs. Joubert. Further, the state maintained that, because Mrs. Joubert could not specifically identify which of the marijuana plants found at

DeRobbio's home actually belonged to her and that she did not actually care for those plants, none of them could be attributed to her as a primary caregiver.

A hearing on defendants' joint motion to dismiss was held before a justice of the Superior Court on May 4, 2011. In a bench decision, the hearing justice dismissed the five-count criminal information. Interpreting the Act to allow for collective possession among DeRobbio, Joubert, and Mrs. Joubert, he determined that defendants lawfully "possess[ed] an authorized amount of marijuana plants and usable marijuana." "[S]plit it up any way you want," the hearing justice explained—the amount of marijuana found at DeRobbio's home could be properly allocated to each of the three cardholders so that each was in lawful possession of marijuana in accordance with the limits set forth in the Act. He further determined that the Act "is a poorly-drafted statute * * * [and] a defendant [should not] be criminally liable for inartful draftsmanship." As such, he found that "no criminal liability" attached to defendants "for cultivating a lawful amount of marijuana." An order to that effect was entered on May 16, 2011.

## C

### Appeal

The state then timely appealed to this Court.[7] On appeal, the state abandons its prior contention that the Act does not provide for collective possession among qualifying patients and their respective primary caregivers. Instead, the state proffers that, even if the Act allowed defendants to grow the marijuana collectively, they nonetheless possessed an amount of marijuana in excess of the Act's limits. In support of this argument, the state contends that none of the marijuana found at DeRobbio's home could properly be credited to Mrs. Joubert.

---

[7] Although the state appealed prior to the entry of final judgment, we nonetheless treat its appeal as timely. See Chapdelaine v. State, 32 A.3d 937, 941 n.1 (R.I. 2011).

Although a registration card issued to Mrs. Joubert as DeRobbio's primary caregiver was found at DeRobbio's home, she had told police that she had never been inside DeRobbio's home, that she was unable to specify which of the marijuana plants belonged to her, and that she did not personally care for those plants. As a consequence, the state reasons, each defendant, pursuant to § 21-28.6-4(a) and (d), "could lawfully have possessed only twenty-four mature marijuana plants (his [respective] twelve, plus [the other's] twelve)—nine fewer than the thirty-three mature marijuana plants that were discovered [at DeRobbio's home] * * *." The state then applies the same argument to defendants' possession of the marijuana seedlings, contending that it also exceeded the limits prescribed in the Act.

In countering the state's arguments on appeal, both defendants briefed this Court separately. In support of his contention that the hearing justice correctly dismissed the criminal information, Joubert reasons that, "assuming arguendo that there were multiple possible interpretations of the statute," the hearing justice correctly interpreted the Act to defendants' benefit. Similarly, DeRobbio relies on the rule of lenity in countering the state's argument on appeal. In support of this argument, he maintains that an imposition of criminal liability would be unconstitutional because the Act does not provide fair warning to criminal defendants. He emphasizes that the Act neither unequivocally proscribes a collective grow of marijuana nor specifies the level or degree of participation the qualifying patient and each primary caregiver must demonstrate to comply with the Act. Thus, DeRobbio reasons, the fact that Mrs. Joubert did not personally care for the marijuana plants should not be fatal to defendants' argument.

Further, responding to the state's contention that he and his two primary caregivers possessed more than the amount of marijuana seedlings allowed under the Act, DeRobbio points out that § 21-28.6-4(e) is silent with respect to whether a primary caregiver may possess more

than twelve seedlings, regardless of the number of qualifying patients he or she serves. According to DeRobbio, since Mrs. Joubert served two qualifying patients, as indicated by her registry identification card, it is reasonable to conclude based on the Act's plain language that she was permitted to possess twenty-four seedlings (twelve for each patient). The additional fifteen seedlings could then be allocated to DeRobbio and Joubert collectively. Thus, DeRobbio contends that he, Joubert, and Mrs. Joubert lawfully possessed the marijuana at issue in this case.

## II

### Discussion

At the outset, this Court recognizes that there is a constitutional question as to whether the Act is preempted (either in whole or in part) by federal law, which prohibits the manufacture, distribution, or possession of marijuana, even if it is used for medical purposes. See Gonzales v. Raich, 545 U.S. 1, 13-15 (2005) (citing 21 U.S.C. §§ 812(c), 841(a)(1), 844(a)). Since neither party has questioned whether the Act can survive under the Supremacy Clause of the United States Constitution, either below or on appeal, we decline to do so. See Vigneau v. La Salle, 111 R.I. 179, 181, 300 A.2d 477, 479 (1973) ("[W]e will not pass upon the constitutionality of an act of the General Assembly when the matter has not been brought into question upon the record of the case with clarity and particularity in the trial court so that the trial justice may have the opportunity to pass upon the question."); see also Devane v. Devane, 581 A.2d 264, 265 (R.I. 1990) ("[I]t is a clear imperative that a trial justice, in the exercise of his or her judicial authority, not resolve a constitutional issue unless and until such issue is actually raised by the parties to the controversy and a necessity for such a decision is clear and imperative. * * * [A] trial justice does not have the authority to sua sponte attack the constitutionality of a statute; it must be raised by a party entitled to make such challenge."). In light of this Court's precedent, in which we

- 10 -

strongly caution against deciding the merits of a constitutional issue not raised by either party, we leave for another day the resolution of whether the Act is preempted by federal law and therefore void, either in whole or in part. See § 21-28.6-10 (discussing severability).

We now turn to the merits of the matter actually before us. In making their joint motion to dismiss, defendants relied on the affirmative defense and dismissal provision provided under § 21-28.6-8.[8] In deciding whether to grant the motion to dismiss, the hearing justice was bound by the terms of that provision, which explicitly states that charges brought in a prosecution involving marijuana "shall be dismissed following an evidentiary hearing where the defendant shows the elements listed in [§ 21-28.6-8(a)]."[9] Section 21-28.6-8(b) (emphasis added). We deem the dismissal provision set forth in § 21-28.6-8(b) to be abundantly clear—the burden is on a defendant to request an evidentiary hearing to show that he or she has satisfied the elements listed in subsection (a) of § 21-28.6-8 and was thus in possession of an amount of medical marijuana that conformed to the limits set forth in the Act. Although the Superior Court held a hearing on the defendants' motion to dismiss, the parties presented no evidence at that hearing, including, among other things, evidence regarding Mrs. Joubert's role as a primary caregiver. Therefore, since no evidentiary hearing was held, in contravention of the plain terms of the Act, the hearing justice's dismissal was premature. Accordingly, we vacate the judgment of the

---

[8] The record is unclear as to whether defendants moved to dismiss pursuant to Rule 9.1 of the Superior Court Rules of Criminal Procedure, or under Rule 12 of the Superior Court Rules of Criminal Procedure (dealing with pretrial motions), which permits a defendant to raise "[a]ny defense or objection which is capable of determination without the trial of the general issue * * * before trial by motion." The memorandum accompanying their joint motion to dismiss relies exclusively on the affirmative defense set forth under the Act. Later, though, in a colloquy with the hearing justice, defendants stated that they had brought the motion pursuant to both Rule 9.1 and the affirmative defense and dismissal provision under the Act. It is not surprising to this Court that the basis for this motion to dismiss was unclear. We agree with the trial justice that the Act (which we have not previously reviewed) itself is poorly drafted.

[9] On appeal, the state does not contest whether defendants have satisfied the requirement set forth in § 21-28.6-8(a)(1).

Superior Court, and instruct the hearing justice to conduct an evidentiary hearing pursuant to § 21-28.6-8(b).

## III

## Conclusion

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court and remand the papers to it with instructions to conduct further proceedings consistent with this opinion.



**TITLE OF CASE:**        State v. Dean DeRobbio et al.

**CASE NO:**        No. 2011-178-C.A.
                    (P2/10-1832 AG & BG)

**COURT:**        Supreme Court

**DATE OPINION FILED:**   April 8, 2013

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**        Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                    Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

                    For State:  Aaron L. Weisman
                            Department of Attorney General

                    For Defendant Dean DeRobbio:  Thomas R. Bender, Esq.

                    For Defendant Joseph Joubert:  Thomas M. Dickinson, Esq.