**Supreme Court**

No. 2010-237-C.A.

(P1/08-3656A)

State                          :

v.                          :

Roger Morin.                          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                               :

v.                                  :

Roger Morin.                        :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  Roger Morin (Morin or defendant) appeals from a Superior Court judgment of conviction for first-degree child molestation.  On appeal, he contends that the trial justice erred in refusing to suppress a statement he made to the Warren police following his arrest.  He also ascribes error to the trial justice's decision to admit that statement without first redacting certain portions.  Finally, he argues that the trial justice erred in denying his motion for a new trial.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

In December 2008, a grand jury returned a secret indictment charging Morin with sixteen counts of child molestation sexual assault, in violation of G.L. 1956 §§ 11-37-8.1 and 11-37-8.3.[1]

---

[1] Under G.L. 1956 § 11-37-8.1, "[a] person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under."  Under § 11-37-8.3, "[a] person is guilty of a second degree child molestation sexual

Sally,[2] Morin's stepdaughter, was identified as the victim in count 1 (first-degree child molestation sexual assault), count 2 (second-degree child molestation sexual assault), and count 3 (second-degree child molestation sexual assault), all of which concerned conduct that allegedly occurred between September 28, 1989, and September 28, 1992.[3] Four additional victims were identified in the remaining counts.

Before trial, Morin successfully moved to sever counts 1 through 3 from the remaining thirteen counts, pursuant to Rule 14 of the Superior Court Rules of Criminal Procedure. This appeal concerns only counts 1 through 3. His motion in limine to preclude the introduction of evidence related to the remaining thirteen counts was also granted.

Morin also moved to suppress a statement he made to the Warren police on September 28, 1992.[4] A hearing on that motion was held before a justice of the Superior Court on October 29-30, 2009.[5] Two witnesses testified at the suppression hearing: Marta Brandstromskelding, a child protective investigator employed by the Department of Children, Youth & Families

---

assault if he or she engages in sexual contact with another person fourteen (14) years of age or under."

[2] Because the victim was a minor when the alleged offenses occurred, we use a pseudonym to protect her privacy. See § 11-37-8.5 (mandating confidentiality of records concerning victims of child molestation sexual assault).

[3] According to Morin's sentencing memorandum, he was originally charged with these offenses in 1992. The state "worked with the Morin family through the auspices of [the Department of Children, Youth & Families]," and the charges were eventually dismissed. Morin raised no objection to the refiling of the charges via indictment in 2008. There is no statute of limitations for either first- or second-degree child molestation sexual assault. G.L. 1956 § 12-12-17(a).

[4] Morin also moved to suppress the statements he made to Marta Brandstromskelding. Because he initially pressed this argument in his prebriefing statement to this Court but abandoned it in his full brief, we do not address it. See State v. Rolon, 45 A.3d 518, 519 n.1 (R.I. 2012) (deeming arguments raised in prebriefing statement but not in full brief to be waived, citing Article I, Rule 16(a) of the Supreme Court Rules of Appellate Procedure).

[5] Because the justice who presided over the suppression hearing later presided over Morin's trial, we refer to him as the trial justice throughout this opinion.

(DCYF); and Det. Christopher J. Dicomitis, a former member of the Warren police.[6]  Below, we summarize the testimony adduced at that hearing.

A

**Motion to Suppress**

Brandstromskelding testified that DCYF received a call in September 1992 from an anonymous woman who reported concerns about Morin's behavior.  To investigate this information, Brandstromskelding went to Morin's home in Warren on September 25, 1992.  That day, she interviewed Morin, his wife, Elizabeth, and their children, including Sally.

According to Brandstromskelding, DCYF received a phone call from a police officer on the following day "notifying us of concerns that a mother and daughter had brought to his attention."  Two days later, on September 28, 1992, Brandstromskelding returned to Morin's home.  She first spoke with Sally, who told her that Morin had molested her.  Brandstromskelding then asked Morin if this was true.  Morin eventually admitted to her that "he had done some of these things to [Sally]" and described this behavior as a "habit."

Brandstromskelding testified that, during this conversation with Morin, his wife was "in and out of the kitchen," where they were speaking, and that she was listening in from time to time.  At some point, Brandstromskelding called the police to report that Morin had admitted to molesting Sally.  After Morin's wife became "agitated" and slammed the blade of a "very large butcher knife" into the kitchen table in front of Morin, Brandstromskelding called the police a second time and asked them to come immediately.

---

[6] At the time of the suppression hearing, Det. Dicomitis was employed as a detective with the Rhode Island State Police.

About two minutes after Brandstromskelding placed the second phone call to the police, Officer Green arrived at Morin's home.[7] Brandstromskelding greeted him at the front door and spoke with him outside. She told him about what Sally and Morin had both revealed to her and about how Morin's wife had reacted by slamming the knife into the table. Officer Green then entered the residence and placed Morin under arrest. According to Brandstromskelding, Officer Green read Morin his <u>Miranda</u> rights upon arresting him.

Detective Dicomitis testified that, in 1992, he was a detective with the Warren police department. On September 28, 1992, Det. Dicomitis advised Morin of his <u>Miranda</u> rights by having him read and sign a standardized form. After Morin waived his <u>Miranda</u> rights, Det. Dicomitis took a statement from him at the police station. In that statement, which was admitted into evidence at the suppression hearing, Morin said that he had touched Sally's vagina on several occasions over the previous six months. He explained that he had stopped doing this "sometime [sic] ago" because "[t]here was no thrill" in it for him.

At the conclusion of the testimony, Morin argued that his statement to police should be suppressed as the fruit of an illegal arrest. He urged the trial justice to reject <u>New York v. Harris</u>, 495 U.S. 14, 21 (1990), in which the United States Supreme Court declined to apply the exclusionary rule to statements obtained after a warrantless arrest in a home. In response, the prosecutor argued that <u>Harris</u> should control the trial justice's decision. He also suggested that, under the factors articulated in <u>State v. Jennings</u>, 461 A.2d 361, 368 (R.I. 1983), the exclusionary rule should not apply to Morin's statement to police.

---

[7] It appears that Officer Green was identified only by his surname in the record. He did not testify at the suppression hearing; the prosecutor advised the court that "without refreshing his recollection from documents," Officer Green was unable to remember "anything" about Morin's arrest.

The trial justice stated that <u>Harris</u> "ought to control." He found that Officer Green "[p]lainly" had "probable cause to arrest [Morin]." Crediting Brandstromskelding's testimony regarding the confrontation between Morin and his wife, the trial justice found that Officer Green "would have truly been derelict in his responsibilities if he did not act as he acted [in arresting Morin]." Having concluded that Morin was legally arrested, the trial justice heard argument regarding whether Morin had knowingly and voluntarily waived his <u>Miranda</u> rights. He then concluded that the prosecution

> "ha[d] satisfied its burden [to prove] by clear and convincing evidence that [Morin] comprehended all of his <u>Miranda</u> rights and voluntarily, without coercion of any kind on the part of the police, decided to speak with the [police], and that his decision was a product of his free and intelligent choice."

Accordingly, he denied Morin's motion to suppress his statement to the police.

Morin then moved to redact certain portions of that statement. Specifically, he sought to redact the portion of the statement in which he had told police that he had sought counseling in the past and that he "wish[ed] to seek further counseling" in connection with his sexual habits. Additionally, he also asked the trial justice to redact two lines of the statement containing extremely crude language.[8] The trial justice rejected Morin's argument that he would be unfairly prejudiced if the jury were allowed to consider the statement in its entirety. The case then proceeded to trial.

**B**

**Trial**

Jury selection began and concluded on November 2, 2009. That day, the state dismissed count 3 under Rule 48(a) of the Superior Court Rules of Criminal Procedure. Counts 1 and 2

---

[8] We discuss the pertinent portion of Morin's statement in part III-B, <u>infra</u>.

(first- and second-degree child molestation, respectively) were tried before a jury on November 3-4, 2009. The state presented testimony from three witnesses: Sally, Brandstromskelding, and Det. Dicomitis.

Sally was the first witness to testify. In September 1992, she was eight years old and lived with her mother, her younger siblings, and her stepfather, Morin. She testified that she and her siblings would sometimes play "the naked game," which she described as "just get[ting] naked and run[ning] around like, you know, kids do." She described an incident that occurred sometime in or around September 1992, when she was playing the naked game with her siblings in the living room. That day, when she was naked and sitting on Morin's lap, Morin touched her vagina and digitally penetrated her.

Sally described another incident that occurred around the same time period. After she had a bad dream, Morin got into bed with her. At first, Sally testified that she "[didn't] really -- know if [Morin] touched [her] or not." When asked where Morin's hands were during that incident, Sally said that she "[didn't] really remember too much, but maybe like around my waist." Later, however, she testified that he had rubbed her vagina over her undergarments.

In September 1992, Sally testified, she told her babysitter (whose name she could not recall) about what had happened with Morin. She also remembered speaking with someone named Marta about the abuse. She testified that she did not tell her mother about the incidents of molestation because she "didn't think that [her mother] would believe [her]."

On cross-examination, Sally stated that she did not remember anything about meeting with Brandstromskelding, even after Morin's counsel attempted to refresh her recollection by having her review Brandstromskelding's notes of their conversation. Sally also admitted that,

during a pretrial proceeding, she had not mentioned the incident in the bedroom. She did not recall going to the police station and speaking with Det. Dicomitis on September 28, 1992.

Because the trial testimony of Brandstromskelding and Det. Dicomitis largely mirrored their testimony at the suppression hearing, we discuss the relevant portions of their trial testimony in our analysis rather than summarize their testimony in this portion of the opinion. On cross-examination, both Brandstromskelding and Det. Dicomitis testified that Sally had not told them about the incident in which Morin touched her in her bedroom. Over Morin's objection, his statement to police was admitted as a full exhibit through Det. Dicomitis.

The state then rested. After the trial justice denied Morin's motion for a judgment of acquittal, pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure, Morin rested as well. On November 4, 2009, the jury returned a verdict, finding Morin guilty on count 1 and not guilty on count 2.

Morin filed a motion for a new trial on November 17, 2009, pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure.[9] The trial justice heard arguments on that motion on January 27, 2010. Morin argued that the jury's verdict—guilty on count 1 and not guilty on count 2—was "confused * * * and perhaps * * * logically inconsistent." In response, the prosecutor suggested that Morin's "acquittal on count 2 provides an additional measure of comfort in the verdict itself."

The trial justice stated that he was "well satisfied that [Sally's] claim of digital penetration was truthful." He also indicated that he was "completely satisfied, beyond a reasonable doubt, that [Morin] engaged in this activity specifically for the purpose of sexual

---

[9] On December 17, 2009, one month after filing his original motion for a new trial, Morin filed an amended motion for a new trial. Because Morin withdrew this amended motion on January 27, 2010, when the trial justice heard arguments on his original motion for a new trial, we do not address it.

gratification or arousal." Furthermore, he agreed with the prosecutor that Morin's acquittal on count 2 strengthened, rather than weakened, his confidence in the verdict. The trial justice concluded that, "based upon [his] independent assessment of the evidence, * * * [Morin] was guilty beyond a reasonable doubt as to the charge of first-degree child molestation as alleged." Accordingly, he denied Morin's motion for a new trial.

At a hearing on March 24, 2010, the trial justice sentenced Morin to forty years imprisonment, with fifteen years to serve and twenty-five years suspended, with probation. Judgment of conviction entered on June 14, 2010. Morin timely appealed to this Court.[10]

## II

## Issues on Appeal

Morin raises three issues on appeal. First, he argues that the trial justice erred in denying his motion to suppress evidence, which was directed at the statement he gave to Det. Dicomitis. As he did below, he contends that this statement should be suppressed as the fruit of an unlawful arrest. Second, he maintains that the trial justice should have redacted a portion of that statement, which he describes as "irrelevant and highly prejudicial." Lastly, Morin argues that the trial justice erred in denying his motion for a new trial. We address each of his contentions in turn.

---

[10] Appeals filed prior to the entry of final judgment are considered timely. See State v. DeRobbio, 62 A.3d 1113, 1118 n.7 (R.I. 2013) (citing Chapdelaine v. State, 32 A.3d 937, 941 n.1 (R.I. 2011)).

# III

## Discussion

### A

### Motion to Suppress

In <u>Payton v. New York</u>, 445 U.S. 573, 576 (1980), the United States Supreme Court held that "the Fourth Amendment * * * prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." Relying on <u>Payton</u>, Morin argues that the trial justice should have suppressed his statement to police as the fruit of an illegal arrest. Although <u>Payton</u>, 445 U.S. at 590, explicitly authorized warrantless in-home arrests made under "exigent circumstances," Morin contends that the trial justice did not "explicitly" find that exigent circumstances justified his arrest.

Although the trial justice did not make an explicit finding of exigent circumstances, our review of the record shows that this finding was implicit in his decision to deny Morin's motion to suppress. The trial justice characterized Brandstromskelding as "a detached state officer" and credited her description of the confrontation that ensued at Morin's residence after his wife learned that he had admitted to molesting Sally. He also credited her testimony that she called police and requested them to come immediately after Morin's wife slammed a butcher knife into the kitchen table. He found that "with the overall heightened concern that had arisen out of violence, * * * [Officer Green] would have truly been derelict in his responsibilities if he did not act as he acted [in arresting Morin]."

Likewise, we conclude that exigent circumstances justified Morin's warrantless arrest in his home. Officer Green had received information that a violent confrontation had taken place and that Morin's wife was (quite understandably) enraged after finding out that Morin had

molested Sally. As the trial justice noted, Morin's admissions to Brandstromskelding, which she relayed to police, "[p]lainly" furnished probable cause to arrest him. The trial justice further observed that "if anybody was to be removed [from the house] at that point, it seems to me it would have been [Morin], who had caused the escalation of the violence as a result of [his] statements * * *." In these circumstances, Officer Green must have "ha[d] a reasonable belief that his assistance [was] required to avert a crisis."[11] See State v. Goulet, 21 A.3d 302, 313 (R.I. 2011) (quoting Duquette v. Godbout, 471 A.2d 1359, 1362 (R.I. 1984)); see also State v. Portes, 840 A.2d 1131, 1137 (R.I. 2004) ("This Court is mindful that police are in the emergency service business and they usually have little or no time to leisurely consider their options or engage in protracted evaluation.").

Morin also urges this Court to reject New York v. Harris, 495 U.S. 14, 21 (1990), in which the United States Supreme Court declined to apply the exclusionary rule to statements obtained after a warrantless arrest in violation of Payton. In light of our conclusion that Morin was validly arrested under Payton because exigent circumstances existed, we need not consider whether the Rhode Island constitution requires us to apply a broader exclusionary rule. See In re Brown, 903 A.2d 147, 151 (R.I. 2006) ("Neither this Court nor the Superior Court should decide constitutional issues unless it is absolutely necessary to do so."); see also State v. Werner, 615 A.2d 1010, 1014 (R.I. 1992) ("[S]tate courts should respect the manner in which [the Fourth Amendment] is interpreted by the Supreme Court.").

---

[11] In most cases, the testimony of the arresting officer should provide the basis for the conclusion that he or she reasonably believed that exigent circumstances existed. Under the facts of this case, we conclude that, although Officer Green did not testify at the suppression hearing, "the circumstances, viewed objectively, justify [his] action[s]" because Brandstromskelding's testimony sufficiently demonstrated the existence of exigent circumstances. See Brigham City, Utah v. Stuart, 547 U.S. 398, 404 (2006) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

Although Morin argues that the trial justice should have suppressed his statement to police as the fruit of an unlawful arrest, he has not pressed on appeal any additional grounds for suppression. Because we hold that Morin was validly arrested, and because we perceive no error with the trial justice's conclusion that Morin knowingly, voluntarily, and intelligently waived his Miranda rights, we affirm his decision to deny Morin's suppression motion.

**B**

**Redaction**

Rule 403 of the Rhode Island Rules of Evidence allows a trial justice to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice * * *." "[A] trial justice's discretion to exclude evidence under Rule 403 must be used sparingly." State v. DeJesus, 947 A.2d 873, 883 (R.I. 2008). He or she must exclude evidence that is "marginally relevant and enormously prejudicial." Id. This Court will affirm a trial justice's evidentiary ruling under Rule 403 "absent an abuse of discretion." DeJesus, 947 A.2d at 883.

Morin moved to redact portions of his statement which contained references to counseling; he also requested redaction of two lines which contained crude language. The pertinent portion of his statement, including those two lines, is below:

> "Q: You freely admit that you have sexually touched your
>     daughter [Sally] and you feel that it is a problem that you
>     have. Is this statement correct [?]
> "A: Yes. And that I wish to seek further counseling.
> "    * * *
> "Q: Have you ever sort [sic] counseling before [?]
> "A: Yes, through the mental health center. I attended one session.
>     Let me explain. The sessions were discontinued because I
>     was referred to another doctor. The first doctor could not
>     handle the pressure.
> "Q: What was the problem that you sort [sic] counseling for[?]
> "A: Call it 'paper pussey [sic],' magazines.
> "Q: What do you mean by 'paper pussey [sic]'[?]
> "A: I would cut the pictures out and masterbate [sic] to

- 11 -

them. I just wanted to stop it. I stopped it all on my own."

After Morin argued that he would be unfairly prejudiced if the trial justice admitted his statement to police without redacting the portion of his statement reproduced above, the trial justice stated:

> "I think it's part and parcel and relevant to what he says. He * * * says the reason [he sought] counseling was, * * * for 'paper pussy' magazines; and, the officer says, what do you mean by that? He says, it's to cut out and masturbate with them. And, in the same breath he says, I wanted to stop that and I stopped it on my own. The officer says, why did you touch the children? And, he says, because it was something new.
> "I think these statements are quite relevant to the rest of the statement; I'm not going to redact them at all. The motion to redact is denied."

Having considered the contested portion in the context of Morin's entire statement, as well as the remainder of the evidence against him—including Sally's damning testimony—we hold that the trial justice did not abuse his discretion in admitting the statement in its entirety. Regarding the reference to "paper pussy," any prejudice that may have inhered to Morin from that crass and offensive phrase was undoubtedly overshadowed by the most prejudicial aspect of his statement: his admission that he had molested his stepdaughter. While that phrase may well have raised some eyebrows among the jury, Morin's explanation of why he molested Sally—because "[i]t was something new" after he stopped masturbating to pornographic magazines—was highly relevant evidence. Furthermore, as the trial justice recognized, the references to counseling were "part and parcel" of Morin's explanation of his behavior.

Morin claims that "[t]he distinct possibility existed that the jurors would be so disturbed by learning of [his] private sexual activities, legal though they might be, that they would be unfairly prejudiced against him and fail to analyze the evidence in an objective manner."

However, his acquittal on count 2 proves that the jury did, in fact, analyze the evidence objectively. The trial justice did not err in refusing to redact Morin's statement to police.

## C

## Motion for a New Trial

"When deciding whether to grant or deny a motion for a new trial, the trial justice acts as a thirteenth juror." State v. Navarro, 33 A.3d 147, 156 (R.I. 2011) (quoting State v. Pineda, 13 A.3d 623, 640-41 (R.I. 2011)). "The trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." Id. (quoting Pineda, 13 A.3d at 641). If the trial justice has set forth sufficient reasoning to support his or her ruling, this Court "accord[s] great weight" to that ruling on appeal. Id. (quoting Pineda, 13 A.3d at 641). We will not reverse the trial justice's decision unless "we are convinced that [he or she] committed clear error or * * * overlooked or misconceived material and relevant evidence [relating] to a critical issue in the case." Id. at 156-57 (quoting Pineda, 13 A.3d at 641).

Morin argues that "[Sally's] testimony as to the first[-]degree molestation was too vague to support a conviction" and that she "was not a credible witness." We disagree. Sally did have some difficulty remembering the details of the bedroom incident; presumably, this is why the jury acquitted Morin on count 2. However, her testimony regarding the first molestation incident in the living room reflected a painfully clear memory. She clearly stated that Morin "put them [his fingers] in [her]."

We discern no error with the trial justice's decision to deny Morin's motion for a new trial. The trial justice correctly articulated and thoughtfully applied the applicable standard for

- 13 -

that decision. He credited Sally's testimony that Morin had digitally penetrated her and found that he had done so "specifically for the purpose of sexual gratification or arousal." He also noted that Morin's acquittal on count 2 strengthened his confidence in the verdict. Because we conclude that the trial justice did not commit clear error and neither overlooked nor misconceived material evidence, we cannot disturb his decision to deny Morin's motion for a new trial.

**IV**

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we remand the record in this case.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      State v. Roger Morin.

**CASE NO:**      No. 2010-237-C.A.
                      (P1/08-3656A)

**COURT:**      Supreme Court

**DATE OPINION FILED:**  June 18, 2013

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

      Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

      For State: Jane M. McSoley
             Department of Attorney General

      For Defendant: Kara J. Maguire
             Office of the Public Defender