Justice Indeglia,
with whom Justice Robinson joins, dissenting.
Although we agree with the majority’s conclusion that, in view of the ambiguous *1245 nature of the facts known to the police, the consent exception to the Fourth Amendment to the United States Constitution and article 1, section 6 of the Rhode Island Constitution did not justify a warrantless search, especially into the defendant’s bedroom, we vigorously disagree with its holding that the officers’ actions could not be upheld under the exigent-circumstances exception to the warrant requirement.' In our view, the circumstances that confronted the officers on July 31, 2007, called for emergency action; and, for that reason, we voice our respectful but unequivocal dissent.
In discerning whether an exigency existed, “[t]he police [must] have [had] an objective, reasonable belief that a crisis can only be avoided by swift and immediate action.” State v. Gonsalves, 553 A.2d 1073, 1075 (R.I. 1989) (quoting Duquette v. Godbout, 471 A.2d 1359, 1363 (R.I. 1984)). Such is the case before us.
While the majority has outlined the facts of this case in detail, we highlight those facts that are reflective of the exigency that the officers faced. Around 9:30 p.m. on July 31, 2007, officers responded to a radio dispatch concerning shots' fired on Pum-gansett Street in Providence. When one patrol arrived at the scene, the gunfire was so recent that the officers testified that the smell of gunpowder still permeated the air. An officer also saw broken glass in the street. At the same time, another patrol was dispatched to a nearby Walgreens pharmacy, where a person claiming to be a victim said that defendant had shot out the back window of his car and had beaten up his girlfriend. It was also learned that one of the victims had been pepper-sprayed. Locating defendant’s house with the victim’s assistance, officers knocked on the door at 19 Pumgansett Street and defendant answered. Seemingly intoxicated and noticeably uncooperative, he acknowledged that there had been a fight outside, but he was of little help beyond that. One of the officers, Sgt. Aspinall, conducted a show-up of defendant, with the witness identifying defendant as the person who had discharged the firearm. Although the officers had identified defendant as the suspect who allegedly fired the gun, the weapon and the pepper spray involved in the altercation had not yet been found or accounted for.
Following defendant’s detention, the officers’ investigative efforts determined that a domestic dispute was at the heart of the incident. Samantha Kruwell, who was present at defendant’s house, told the officers that there had been a fight between her and her ex-boyfriend immediately outside the Pumgansett Street'house.[1] Officers observed that Stephanie Kruwell, defendant’s fiancée and Samantha’s mother, had a bloody cut on her hand from her attempt to break up the fight.
Stephanie and Samantha were not entirely forthright in their responses to the officers. Apart from her recounting of that night’s events that conflicted with defendant’s, Stephanie initially told the officers that there were no guns in the house. She then reversed course and admitted that there was a gun, and, as'the trial justice found, she allowed the officers to enter the home to determine'its whereabouts. It was at this point that the officers saw “a young child running around the house,” as Stephanie and Samantha tried to attend to him. After being directed by Stephanie to defendant’s room, the officers conducted a brief, limited search, which turned up a gun ünder a pile of clothing along with several loose bullets. The Bureau of Criminal Identification unit was called to retrieve the gun.
*1246 We agree that “[a]t the core of the privacy protected by the Fourth Amendment is the right to be let alone in one’s home.” Sutterfield v. City of Milwaukee, 751 F.3d 542, 550 (7th Cir. 2014). Nevertheless, we afford protection to an officer’s “[o]n the spot reasonable judgments * * * about risks and dangers * * Fletcher v. Town of Clinton, 196 F.3d 41, 50 (1st Cir. 1999). “Deference to those judgments may be particularly warranted in domestic disputes” where “violence may be lurking and explode with little warning.” Id. An officer is not required to wait until the anticipated danger—-whether to himself or herself or to the public—comes to fruition. See Brigham City, Utah v. Stuart, 547 U.S. 398, 406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (Brigham City) (“The role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties * * *.”); see also Mincey v. Arizona, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (“The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.”) (quoting Wayne v. United States, 318 F.2d 205, 212 (D.C. Cir. 1963) (opinion of Burger, J.)).
The instant case presents such a setting. The defendant’s arrest did very little to address the underlying domestic dispute that served as the catalyst to the fight and ultimate shooting. Indeed, his arrest may have added more fuel to the fire. Although the officers were unfamiliar with Samantha and Stephanie, they knew that they had been recent active participants in a fight in the street. They saw Stephanie’s bloodied hand from the altercation and they learned from Samantha that she had been in the fight. Leaving the scene without seeking the gun, the officers would have left Samantha and Stephanie with the means to pursue their earlier aggressors. Whether they would have acted upon such a motivation is not something the officers could have ruled out based on the information known to them at that time. As the trial justice noted, “Frankly, the police would have been foolish and derelict in their duty not to be doing what they were.”
Moreover, “[wjarrantless entries are justified to protect not only victims and fellow police officers, but also innocent bystanders and suspects themselves.” Gonsalves, 553 A.2d at 1075; see also State v. Kendrick, 314 Conn. 212, 100 A.3d 821, 837 (2014) (deeming reasonable the police entrance into the bedroom under the exigent-circumstances doctrine based on the officers’ reasonable belief “that the entry was necessary for their own protection, as well as the protection of others in the apartment”). Exigent circumstances aré found when an officer anticipates that someone in the home, whether a child or an adult, will be harmed by a firearm. See, e.g., United States v. Hardy, 52 F.3d 147, 149 (7th Cir. 1995) (holding that exigent circumstances justified the warrantless entry and search of the defendant’s motel room where the police officers reasonably believed that the defendant, with a sawed-off shotgun, was a threat to the officers and the women and children in the room); State v. Christensen, 663 N.W.2d 691, 696 (S.D. 2003) (“[T]he house was unlocked and unwary children could have entered to take possession of loaded firearms.”).
Here, the officers could reasonably have believed that it was necessary to secure the gun before either the heated domestic dispute reignited or, perhaps worse, the young child located the unsecured firearm. See United States v. Janis, 387 F.3d 682, 688 (8th Cir. 2004) (upholding a warrant-less search of a home for a gun that discharged and injured the defendant because the officer testified that he had concerns that a loaded weapon was “out in the *1247 open” and “still at the scene”); United States v. Antwine, 873 F.2d 1144, 1145-47 (8th Cir. 1989) (During a protective sweep following the arrest of a robbery suspect who brandished a gun, an officer found a young boy and girl inside the home. Denying the motion for suppression, the court stated that “a warrantless seizure of a weapon may be considered ‘reasonable’ within the meaning of the Fourth Amendment when justified by an officer’s legitimate concern for someone’s safety.”).
The majority opinion suggests that a subjective analysis is employed when determining whether the exigent-circumstances exception vindicates a warrantless search. Specifically, it states that: “The testimony of the intruding officer provides the court with insight into the officer’s motivation for the entry and, therefore, provides the basis for the court’s conclusion that exigent circumstances support the intrusion.” (Emphasis added.) This conclusion, however, misconstrues the controlling standard for assessing whether a warrantless search is reasonable under the Fourth Amendment because the officer’s motivation is of no moment. In fact, the United States Supreme Court has explicitly rejected this approach. See Brigham City, 547 U.S. at 404, 126 S.Ct. 1943 (setting forth the United States Supreme Court’s explicit view that, for purposes of the Fourth Amendment’s reasonableness analysis, “[t]he officer’s subjective motivation is irrelevant”); Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (explaining the United States Supreme Court’s unwillingness “to entertain Fourth Amendment challenges based on the actual motivations of individual officers”).
In Brigham City, 547 U.S. at 406-07, 126 S.Ct. 1943, the United States Supreme Court held that the exigent-circumstances exception justified the police officers’ war-rantless entry. The defendant in that case, which involved an altercation observed at a 3 a.m. house party, argued that police entry was unreasonable based on the officers’ subjective motivations, asserting that they “were more interested in making arrests than quelling violence.” Id. at 400-02, 404, 126 S.Ct. 1943. In rejecting this argument, the Supreme Court made clear that the Fourth Amendment’s reasonableness analysis “has nothing to do with discerning what is in the mind of the individual officer conducting the search”; id. at 405, 126 S.Ct. 1943; rather, “[a]n action is ‘reasonable’ under the Fourth Amendment, regardless of the individual officer’s state of mind, ‘as long as the circumstances, viewed objectively, justify [the] action.’” Id. at 404, 126 S.Ct. 1943 (quoting Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)); see also Bond v. United States, 529 U.S. 334, 338 n.2, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000) (“The parties properly agree that the subjective intent of the law enforcement officer is irrelevant in determining whether that officer’s actions violate the Fourth Amendment. * * * [T]he issue is not his state of mind, but the objective effect of his actions.”); Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (“[T]he subjective motivations of the individual officers * * * ha[ve] no bearing on whether a particular seizure is ‘unreasonable’ under the Fourth Amendment.”).
By shifting the focus to “the officer[s’] motivation for the entry,” the majority has erroneously applied a subjective analysis to determine whether an exigency existed. When the circumstances are examined objectively, however, the officers’ entry was clearly justified under the exigent-circumstances exception. State v. Morin, 68 A.3d 61, 67 n.11 (R.I. 2013) (citing Brigham City, 547 U.S. at 404, 126 S.Ct. 1943). Although the officers did not specifically state that they were “faced with an emer *1248 gency” or “concerned,” they did testify about the actual circumstances that confronted them: shots had recently been fired; there had been a street fight between Samantha and her ex-boyfriend; someone had been pepper-sprayed; and the officers had been told that there was a firearm in the house where, as the majority noted, a young child “was running around.” Here, “the circumstances, viewed objectively, justify [the officers’] action[s].” Id. (quoting Brigham City, 547 U.S. at 404, 126 S.Ct. 1943).
Finally, we do not agree with the majority that the officers should have secured the premises and somehow removed the occupants from the house while they went about seeking a search warrant. Rather, this case was “defined by a time-urgent need to act that [made] resort to the warrant process impracticable.” Sutterfield, 751 F.3d at 559. It was not “early on a weekday afternoon” when “ ‘the amount of time necessary to obtain a warrant’ likely would have been minimal”; rather, it was “late in the evening * * * when officers might not have had ready access to a magistrate.” United States v. Menchaca-Castruita, 587 F.3d 283, 294 (5th Cir. 2009) (quoting United States v. Rico, 51 F.3d 495, 501 (5th Cir. 1995)). As this Court stated in Gonsalves, 553 A.2d at 1076, “Swift action was imperative. Any delay in obtaining a warrant at one o’clock in the morning could have ignited an already volatile situation.”
From our view, this case falls squarely within the applicability of the exigent-circumstances exception because the above-mentioned circumstances precisely demonstrate “such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant.” State v. Gonzalez, 136 A.3d 1131, 1151 (R.I. 2016) (quoting United States v. Adams, 621 F.2d 41, 44 (1st Cir. 1980)). “[P]olice are in the emergency service business and they usually have little or no time to leisurely consider their options or engage in protracted evaluation.” Id. (quoting State v. Portes, 840 A.2d 1131, 1137 (R.I. 2004)). The United States Supreme Court has underscored that “[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.” Kentucky v. King, 563 U.S. 452, 466, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) (quoting Graham, 490 U.S. at 396-97, 109 S.Ct. 1865). Because, in our view, the circumstances of this case compelled such an “allowance,” we are confident that the trial justice’s finding of exigency was correct. For that reason, we respectfully dissent.

. The ex-boyfriend was later identified as Nathan Spardello.